# THE TOWN OF EAGLE

## *v.*

# HENRY A. KOHN *et al.*

1. MUNICIPAL SUBSCRIPTION AND BONDS—*conditional subscription.* Under the act of April 16, 1869, authorizing municipal subscriptions to railroads, upon conditions, and providing such bonds or subscription "shall not be valid and binding until such conditions precedent shall have been complied with," it is not essential to the validity of the subscription, or bonds issued thereunder, that the conditions annexed shall have first been performed. If performed afterwards the bonds will be valid.

2. SAME—*commercial quality of coupons.* Municipal bonds issued in aid of railroads are to be treated as commercial paper, and the coupons attached thereto are negotiable by delivery only, without indorsement. Being of such character, unless the statute declares otherwise, a *bona fide* holder of such paper will be protected, and is not required to take notice of the conditions upon which they were issued, or the resolutions upon the records of the railway company.

3. SAME—*not valid until conditions complied with.* Municipal bonds issued upon a subscription to a railway company, with conditions annexed, upon which the bonds were to be issued under the act of April 16, 1869, are not valid and binding, even in the hands of an innocent holder, for value, where the conditions named have not been complied with.

4. NEGOTIABLE PAPER—*when void in hands of innocent purchaser.* Where a statute expressly declares that negotiable securities, given under certain circumstances, shall be void, the court will hold them void, even in the hands of a *bona fide* indorsee without notice.

5. SAME—*illegality of consideration as against bona fide holder.* But, unless it has been so *expressly* declared by the legislature, illegality of consideration will be no defense in an action upon negotiable paper, by a *bona fide* holder without notice, unless he obtained the note or bill after its maturity.

APPEAL from the Circuit Court of La Salle county; the Hon. EDWIN S. LELAND, Judge, presiding.

Mr. T. LYLE DICKEY,* and Mr. SAMUEL RICHOLSON, for the appellant.

Mr. CHARLES BLANCHARD, for the appellees.

* This cause was originally submitted at a term prior to that when Mr. JUSTICE DICKEY came upon the Bench.

Mr. Chief Justice Sheldon delivered the opinion of the Court:

This was a suit brought by the appellees, Henry A. Kohn and others, against the appellant, the town of Eagle, to recover upon six interest warrants, which were or had been attached to certain bonds issued by the supervisor and town clerk of said town, to the Plymouth, Kankakee and Pacific Railroad Company, on the first day of December, 1870.

The court below sustained a demurrer to the defendant's plea to the declaration, and this is assigned for error.

The substantial facts set out by the plea are, that on the second day of November, 1869, the legal voters of the town of Eagle voted to subscribe $25,000 to the capital stock of the Kankakee and Illinois River Railroad Company. On the 21st day of October, 1870, the said Kankakee and Illinois River Railroad Company became consolidated with the Plymouth, Kankakee and Pacific Railroad Company.

Section seven of an act passed by the General Assembly of the State on the 16th day of April, 1869, (Laws 1869, p. 319,) contains the provision, that "any county, township, city or town shall have the right, upon making any subscription or donation to any railroad company, to prescribe the conditions upon which such bonds, subscriptions or donations shall be made, and such bonds, subscriptions or donations shall not be valid and binding until such conditions precedent shall have been complied with."

The conditions of the vote for the subscription for which these bonds issued, were, that they should be subject to the following conditions:

1st. That said railroad shall be so constructed as to pass through said town of Eagle, making Streator a point, in a north-westerly direction.

2d. Said company shall locate and maintain a depot in said town.

3d. That said bonds shall be delivered to said railroad company in sums of $2000 for every mile of road graded, as the

work progresses, and $1000 for every mile of ties laid; the balance when the road-bed is ready for the iron.

4th. Provided, nevertheless, that the subscriptions to said capital stock shall be void and of no effect, unless the agreement by said railroad company, for said iron and rolling stock, with responsible parties, shall be made on or before one year from the date of voting by said town of Eagle—one year from November 2, 1869.

The board of directors of the said Kankakee and Illinois River Railroad Company, on the 25th day of May, 1869, (in pursuance of the sixth section of their charter,) adopted and spread upon their records a resolution, that " the various township bonds which may be voted on the line of the Kankakee and Illinois River Railroad, in aid of its construction, should only issue in exchange for the stock of said company, when a well assured contract for the iron shall have been secured by the directors of said railroad company, based upon the completion of the road-bed through said town."

The plea negatives the compliance with any one of the above named conditions, except that the third one is negatived in this mode only: " and that the ties for said railroad were never laid for any one mile of said railroad within said town; and that the road-bed of said railroad was never ready for the iron or any part thereof;" and the plea avers that no part of the line of said railroad was ever built or constructed.

We do not think it is to be regarded that the conditions named were prerequisite to the making of the subscription and issuing of the bonds, and that they were to be complied with before the subscription could be made or the bonds issued; but only that the subscription and the bonds were to be subject to the conditions.

There would, then, be no want of power to make the subscription and issue the bonds. As between the town and the railroad company, non-compliance with the conditions would be a good defense against the railroad company.

But, irrespectively of the above cited provision of section seven, of the act of April 16, 1869, we consider that it would

be otherwise as against innocent holders for value, as are these appellees.

It is the well settled doctrine, that bonds of this character are to be treated as commercial paper; and this court has held the coupons attached to them to be negotiable by delivery only, without indorsement. *Johnson* v. *County of Stark*, 24 Ill. 75. And, aside from the provision of the statute, we do not consider that *bona fide* holders for value would be required to take notice of such conditions, or the resolution upon the records of the railroad company, but they would enjoy the protection of *bona fide* holders of negotiable paper; and want of compliance with such conditions, or resolution, would not constitute any defense as against them.

The question, then, we conceive, depends upon the above provision of the statute of April 16, 1869, giving the right to prescribe the conditions upon which such bonds or subscriptions should be made, and declaring that such bonds or subscriptions, "*shall not be valid and binding* until such conditions precedent shall have been complied with,"—what scope is to be given thereto—whether it is to be confined in its operation to the railroad company to which the bonds shall issue, or extend to innocent holders for value. The words of the statute, by their natural force, apply to bonds under all circumstances, in whosesoever hands they may be. Courts are wont to allow to such peremptory language of a statute full force and effect, and where a statute expressly declares that negotiable securities, given under certain circumstances, shall be void, to hold them void, even in the hands of a *bona fide* indorsee. Thus, upon the English statutes of Anne, declaring that promissory notes and bills of exchange given for an usurious consideration, or for a gaming consideration, should be void, the English courts put the construction that the securities were void in the hands of a *bona fide* indorsee without notice. And so this court has held, under our statute, in respect to a bill of exchange given for a gaming consideration. *Chapin et al.* v. *Dake*, 56 Ill. 296.

And the doctrine is laid down generally, that in those cases in which the legislature has declared that the illegality of the contract shall make the security, whether bill or note, void, the defendant may insist on such illegality, though the plaintiff took the bill or note *bona fide*, and gave a valuable consideration for it. Chit. on Bills, 115, and cases cited in note. But, unless it has been *so expressly* declared by the legislature, illegality of consideration will be no defense in an action at the suit of a *bona fide* holder, without notice of the illegality, unless he obtained the bill or note after it became due. Id. 116.

True, there is nothing of illegality in the bonds in question, nor does the statute declare them void. But illegality is not the circumstance which avoids negotiable securities in the hands of a *bona fide* holder, as it is seen that illegality of consideration, in the absence of express declaration by the legislature that the securities shall be void, will be no defense against a *bona fide* holder, without notice of the illegality. It is by force of the peremptory words of the statute declaring them void, that they are held to be void in the hands of an innocent indorsee without notice. The words of the statute in question, though not that the bonds shall be void, are, that they shall not be valid and binding, until the conditions are complied with. They are equally imperative to the degree named, as language declaring securities void. The bonds are not declared to be, to their whole extent, not valid and binding, but *are* declared to be to a certain extent, not valid and binding; that is, until the conditions are complied with.

To give full force and effect to the peremptory words of the statute, and from analogy to the principles and decisions which have been adverted to, we think the proper construction here is, to hold that by virtue of the express declaration of the statute, the bonds in question are not valid and binding until the conditions named shall have been complied with, even in the hands of innocent holders without notice. Holding thus, the demurrer to the plea should have been overruled instead of being sustained.

The judgment is reversed, and the cause remanded for a new trial.

*Judgment reversed.*

Mr. JUSTICE SCOTT dissenting.

Mr. JUSTICE DICKEY, having been of counsel in this controversy, did not participate in its consideration.