GEORGE PARKER ET AL.

v.

JACKSON SMITH ET AL.

</div>

1. BONDS IN AID OF RAILROADS—CONDITIONS OF SUBSCRIPTION—NON-PERFORMANCE BY RAILROAD—ENJOINING TAX.—Where the conditions upon which a town was authorized to subscribe for a railroad, were that such road should be built through the township within one-half mile of the court house, and should terminate at or near the city of V., the building of a road across one corner of such township and terminating at a small village nine miles from V. is not a substantial compliance with the conditions of the vote for subscription, and bonds issued in pursuance of such vote are invalid and no tax can be collected to pay interest thereon though they may be in the hands of innocent holders.

2. RECITALS—ESTOPPEL.—A bond reciting that it is issued by virtue of an Act to incorporate the P. & D. R. R. Co. and in accordance with the vote of the electors of said town, although it may preclude an inquiry as to whether an election was held and a vote authorizing the bonds to issue, yet it could not conclude an inquiry into the performance of a condition that was to be performed after the bonds issued. Such a conclusion would be in direct conflict with the statute of 1869.

3. CONDITIONS IMPOSED BY TOWN.—The statute of 1869, giving to towns the right to prescribe conditions upon which subscriptions should be made or bonds issued, and declaring that such bonds or subscription shall not be valid and binding until the conditions shall have been complied with, applies to the bonds under all circumstances, in whosesoever hands they may be.

APPEAL from the Circuit Court of Crawford county; the Hon. JOHN H. HALLEY, Judge, presiding.

Messrs. PARKER & OLWIN and Mr. J. C. MAXWELL, for appellants; contending for the right of a township to impose conditions to its subscription, cited People v. Dutcher, 56 Ill. 144; People v. Glann et al. 70 Ill. 232; Alley et al. v. Adams County, 76 Ill. 101; S. & I. S. E. R'y Co. v. Cold Spring, 72 Ill. 603; Laws 1869, 319; Ill. Cent. R. R. Co. v. Town of Barnet, 85 Ill. 313.

Bonds issued without a compliance with the conditions, would not be valid: Town of Eagle v. Kohn et al. 84 Ill. 295; Laws 1869, 319, § 7.

The supervisor and town clerk are not the authorities to determine when conditions precedent have been performed: Middleport v. Ætna Life Ins. Co. 82 Ill. 562; Rev. Stat. 1877, Chap. 139, § 118.

They could not subscribe the stock and issue bonds except at a regular town meeting or by order of the town board: Bouton et al. Board of Supervisors, 84 Ill. 384.

If the vote was for a division of the road, bonds could not be issued to the entire line: McWhorter v. People, 65 Ill. 290.

A change in the termini of the road defeats the subscription: Banet v. A. & S. R. R. Co. 13 Ill. 513; 1 Redfield on Railways, 411; Cooley on Constitutional Limitations, 215.

The burden of proof is upon the railroad to show that the subscription was authorized by a vote of the people prior to the adoption of the Constitution: Jackson County v. Brush et al. 77 Ill. 59; Madison County v. The People, 58 Ill. 456.

The township is not liable for the unauthorized acts of its officers: Board of Trustees v. Schroeder, 58 Ill. 353.

When a condition precedent in an election notice has not been complied with, the election is void: McWhorter v. The People, 65 Ill. 290; People v. Chapman, 66 Ill. 137.

The supervisor did not act as moderator of the election, and the polls were not open until 11 o'clock A. M.: The People v. Town of Santa Anna, 67 Ill. 57.

Town officers cannot delegate their powers: East St. Louis v. Wehrung, 46 Ill. 392; Clark v. Hancock Co. 27 Ill. 305: Jackson Co. v. Brush et al. 77 Ill. 59; County of Richland v. The People, 11 Chicago Legal News, 43, [ante. 210.]

A purchaser of municipal bonds issued without authority is not an innocent purchaser. It is his duty to look to the authority under which the officers issuing them acted: Town of Pana v. Lippincott et al. 2 Bradwell, 466; The Floyd Acceptances, 7 Wall. 666; Marsh v. Fulton County, 10 Wall. 676; Loan Association v. Topeka, 20 Wall. 660; Elmwood v. Marcy, 2 Otto, 289; Town of Concord v. Savings Bank, 2 Otto, 625; Harkman v. Bates County, 2 Otto, 572; Baltimore v. Reynolds, 20 Md. 1; Hodges v. Buffalo, 3 Com. 430; Livingston v. Weider, 64 Ill. 427; Dillon on Mun. Cor. § 372; Hartman v. Bates Co. 8 Chicago Legal News, 305; McCoy v. Briant, 11 Chicago Legal News, 84; School Directors v. Fogleman, 76 Ill. 189; Bissell v. v. Kankakee, 64 Ill. 249.

The road should be equipped as well as built to its terminus, to comply with the conditions: P. & D. R. R. Co. v. Henderson et al. Sup. Ct. Ill. 1878.

The road not being built according to conditions, the bonds were not entitled to registration: Gross' Stat. 1869, Chap. 86, § 96; McWhorter v. The People, 65 Ill. 290; Flack v. Hughes, 67 Ill. 384.

Statutes increasing the burden of taxation must be strictly construed, 68 Ill. 132.

Fraud vitiates all contracts: Sims v. Klien, Breese, 302.

Mr. E. CALLAHAN, Mr. F. ROBB and Mr. P. G. BRADBERRY, for appellees; that a bill cannot be filed by one tax-payer for himself and all other tax-payers, cited High on Injunctions, § 757; 2 Dillon on Mun. Cor. § 735; DuPage County v. Jenks, 65 Ill. 275.

If the town had authority to issue the bonds, the tax cannot be enjoined: Dillon on Mun. Bonds, 16; 1 Dillon on Mun. Cor. 415.

Irregularities in the execution of the power constitute no defense to the bonds: Burr v. City of Carbondale, 76 Ill. 455; Maxcy v. Williamson Co. 72 Ill. 307.

The supervisor, assessors and collector were judges of the election: Rev. Stat. 1869, 778, § 1; Rev. Stat. 1874, 457, § 40.

The supervisor and town clerk were the proper authorities to

determine if the conditions precedent had been per formed: Dillon on Mun. Bonds, 22; Jackson Co. v. Brush, 77 Ill. 59.

The law provides for registration of the bonds, and this having been done, the tax must be levied: Dunnovan v. Green, 57 Ill. 63.

The recital in the bond, by the proper officer, that an election was held, is conclusive: Knox Co. v. Aspinwall, 21 How. 539; Dillon on Mun. Bonds, 24.

If the vote was for the subscription, the law made it the duty of the supervisor to issue the bonds: Ill. Mid. R'y Co. v. Town of Barnet, 85 Ill. 321; People v. Logan Co. 63 Ill. 374; Naper Valley R. R. Co. v. Naper Co. 30 Cal. 437.

The issue of the bonds was a waiver of irregularity in performing the condition: Chiniquy v. The People, 78 Ill. 570.

So long as the road subserves all interests, a change of route does not release a subscription: Barnet v. A. & S. R. R. Co. 13 Ill. 513; Sprague v. I. R. R. Co. 19 Ill. 174; Ill. R. R. R. Co. v. Zimmeer, 20 Ill. 654; Ill. R. R. R. Co. v. Beers, 27 Ill. 185; Rice v. R. I. & A. R. R. Co. 21 Ill. 93; Redfield on Railways, 211.

After the road has been built on the faith of the vote, the municipality should be estopped from impeaching the election and enjoining the issue of the bonds: Prettyman v. Tazewell Co. 19 Ill. 406; Butler v. Dunham et al. 27 Ill. 474; Robertson v. City of Rockford, 21 Ill. 457; Johnson v. Stark Co 24 Ill. 85; Perkins v. Lewis, 24 Ill. 208.

In all cases where the right to add conditions to subscriptions has been sustained, the conditions appeared in the petition and notices: People v. Dutcher, 56 Ill. 148; People v. Glann, 70 Ill. 232.

Delay in opening the polls will not affect the validity of the election: Platt v. The People, 29 Ill. 72.

Where a terminus is to be fixed at or near a particular point, a large discretion is given to the company: Redfield on Railways, 413; Dillon on Mun. Cor. § 422; Van Hostrip v. Madison City, 1 Wall. 291

Allen, J. A bill was filed by plaintiffs against defendants

to the March term of the Circuit Court, A. D. 1877, to enjoin Smith as collector of Honey Creek township, and Updyke, county treasurer, from proceeding to collect certain taxes extended against them on the books, to pay interest on $15,000 in bonds issued by said township to the Paris & Danville Railroad Co. The bill charges that the Railroad Co. failed to keep and observe on its part the conditions upon which the subscription was made to the company's capital stock, to pay which, the bonds were issued. And that until such conditions are performed by the company, the township nor the tax-payers are liable for either the principal or interest on the bonds. The bill prays that defendants may be enjoined from collecting or proceeding to collect such tax. Upon this bill a temporary restraining order was issued by the judge of the Circuit Court. Upon filing an answer by defendants, the Circuit Court on bill, answer, affidavits and exhibits submitted, dissolved the injunction and entered a decree for cost against complainants. From this decree an appeal was prayed and allowed to this court. Several errors are assigned on the record, but we shall notice only such as seem to us to go to the merits of the controversy; and first, have the P. & D. R. R. Co. complied with the conditions upon which the subscription to its capital stock was made, and to pay which the bonds were issued by the township? If the R. R. Co. have complied, then the decree of the court was proper. If they have failed in a substantial compliance with the conditions of the subscription, then we regard the judgment of the court as error. The Paris & Danville Railroad Co. was organized under a charter granted by the General Assembly, approved March 26th, 1869, Private Laws 1867, Vol. 3, p. 144. They were authorized to construct a road from Paris, in Edgar county, to Danville in Vermillion county, and by a provision of the same charter, to extend, construct and equip their road "to a point at or near Vincennes, in the State of Indiana." By the 9th section of the charter, the company was authorized to receive subscriptions to their capital stock from counties, townships, etc.

Upon a petition of twenty-five legal voters of a township, an election to be called to vote for and against subscription to the

capital stock of the company. Such a petition was presented by the requisite number of voters to the township authorities of the township of Honey Creek; an election was called, and a subscription of $45,000 was voted on the capital stock of the company. In the petition for an election, in the notice of an election, and also on the ballots voted, were the following conditions: No portion of said subscription to be payable, nor any interest to accrue on the bonds issued in payment thereof, until the said railroad company, its agents or assigns shall build and equip said railroad through within one-half of a mile of the court house in Robinson, in said county, and from thence to a point at or near the city of Vincennes, in the State of Indiana. Under this notice the election was held, subscription made, and bonds issued, and a return of this election was made to the county clerk, and the petition and returns filed with the clerk, and became public records in his office. The evidence in this record shows that the railroad company failed to construct the road through said township, but crossed the line out of the township near the center of the east line running north and south. The evidence further shows, and it is confessed by appellees, that instead of terminating the road at a point at or near the city of Vincennes, they fixed the terminus at Lawrencevilie, nine miles from the city of Vincennes. Was this terminus at or near Vincennes in the sense in which these words are used in the charter, or as they were understood by the parties when the subscription was made. A brief review of the evidence as to the situation of the people of the township will throw some light on this question. Vincennes was the market and principal trading point for the inhabitants of Honey Creek township; they were farmers; they had no towns, villages—important villages—in their vicinity to benefit by the road. They desired a ready and cheap method of reaching the Vincennes market, where there was much competition in trade, and where there were, competing railroads. It was a point to them of great advantage, if it could be reached by this railroad. Again, if they could have six miles of railroad built through their township, the tax upon the railroad property would form a large item in their municipal revenues, and to secure these

advantages they consented to aid the railroad company to the extent of $15,000. In their municipal bond these were the inducements that procured their assent to the subscriptions. Upon the other hand, the railroad company agreed to build and equip their road through the township and to a point at or near the city of Vincennes (the city being across the line in another State, the road could not enter without authority from the other State); this was the undertaking by the railroad com- pany; this was what they agreed to do in consideration of the aid they were to receive from the township.

Appellees insist that they have kept these conditions; 1st, by running across the corner of the township, they have brought the road within easy access to the inhabitants of the township; that they have fixed the terminus of the road at Lawrenceville, and that that is a point near Vincennes; that their charter "speaks from Springfield," and that as compared with Spring- field, Lawrenceville is near the city of Vincennes; while the charter may speak from Springfield, the contract speaks from Honey Creek township, and that is almost as near Vincennes as is Lawrenceville. Appellees say that upon a careful survey of the route to Lawrenceville, it was found a shorter and cheaper line than the line to Vincennes; the estimates of their engineer are given in proof of this, accompanied by his argument in favor of this terminus, in which he argues that this route down Bushy Flat and across the Embarrass river can be built much cheaper than to Vincennes, and will be more to the interest of the rail- road company. Can it be said this consideration would release the railroad company from their obligation under this contract? If so, they might have terminated their road in Brush Creek Flat, or at the Embarrass river just as well, and from the evi- dence the people of Honey Creek township would have been but little less accommodated by stopping at the one place as the other, for the evidence shows that no arrangement has ever been made by the P. & D. R. R. Co. by which they could run a freight car over the O. & M. road. That it costs more to transfer their produce from one road to the other and pay the charges to the O. & M. road than to take their freight in wagons to Vincennes, as they did before the road was built. But appellees

say they do run trains over the O. & M. road to the Union Depot at Vincennes. And the evidence shows that one passenger train is run each way, once in 24 hours, and that by their running arrangement the people of Honey Creek township are accommodated. They can reach Vincennes at 9 o'clock P. M. and leave on return trip at 4 A. M., next morning, so that there is speedy communication between the two points by rail; but if one has business to look after that requires daylight, he cannot go and return the 18 or 20 miles by rail in less than two nights and one day.

In any light in which this question can be viewed, we cannot find a compliance with the terms of the subscription, either in letter or spirit. The evidence shows that Lawrenceville is a village of but little trade, no competition among buyers and sellers of produce, and no competition in transportation lines, which always affect to a greater or less extent the value of farm products, so that so far as affording to the inhabitants of Honey Creek Township easy and cheap access to a market in that direction, the condition upon the part of the company has wholly failed. Upon the question as to the terminus of this road being within the limit prescribed by the charter and the vote, we are referred to the decision of the court in Van Hostrip v. City of Madison, 1 Wall. 291. In that case the subscription was made by the city to a railroad company that did not propose to build a road to the city, of Madison, but a branch from Shelbyville to a connection with the Indianapolis and Madison road, which should terminate at Madison. The junction of the branch with the main line was to be at Columbus, and the court held that, inasmuch as the object of the acts under which the city could take stock in a railroad was to open lines that would bring trade to the city, that this subscription came within the spirit of the law, and the city was held liable. The facts, as well as the reasons, in that case are wholly different from this one, and we do not regard the decision of the court as in point. But it is insisted by the appellee, that the issue of the bonds by the proper township authorities was a waiver of any and all conditions precedent, and that the rights of the innocent holders of the

bonds, for value, cannot be affected by any failure to comply with such conditions; and reference is made to Chiniquy v. The People, 78 Ill. 570, and to County of Knox v. Aspinwall, 21 How. 539. In the case reported in 78 Ill. *supra*, the court say that, "Even if there was a condition which was not performed by the railroad company, it is not shown in the record what it was; * * we must presume the condition was waived."

In the case that we are considering, the non-performance of the conditions is shown in the record. So that the authority in that case is not applicable to this. In the case, County of Knox v. Aspinwall et al. *supra*, the court say: "That the bond upon its face imported a compliance with the law under which it was issued, and that the purchaser was not bound to look farther for a compliance with a condition to the grant of power." To understand the force and application of the language in this opinion, it is well to consider the exact question that the court had before it. The county of Knox, by her commissioners, had been authorized by an act of the legislature of Indiana to make a subscription to the capital stock of the Ohio & Mississippi R. R. Co., "provided a majority of the qualified voters of said county, at an annual election, should vote for the same." A vote was had and the subscription made, and bonds issued in payment of the same. Suit was brought by Aspinwall on interest coupons that had been attached to the bonds. A defense to the suit was sought to be made on the ground that sufficient notice of the election had not been given, as the law required. The court ruled that the question was one that the law left with the commissioners to determine before making the subscription and issuing the bonds; and that having acted under the authority conferred by the law, it was to be presumed that the precedent conditions had been performed, and that such a defense as an insufficient notice could not be set up by the defendant in a suit by an innocent holder of coupons; and it was upon this question that the court laid down the rule above quoted. This same rule has been generally adopted by the Federal as well as the State courts, yet some eminent law writers have questioned its propriety; and the Federal courts have in some noted instances departed from it. Our own State courts have sanctioned

and have recognized it as the rule. Admitting the rule in its application to all the cases to which we have been referred, and giving to the language used by the court its full scope and meaning, does the case that we are considering come within that rule? What conditions precedent did the court regard as conferring authority to make subscriptions and issue bonds? Were not the giving proper notice of a vote and a vote at a regular annual election, and a majority of legal voters at such election for subscription, the precedent steps to be taken before the commissioners were empowered to make the subscriptions and issue the bonds? We understand such to have been the precedent conditions which were required, and that when the bonds were issued and passed into the hands of innocent purchasers for value, the holder would be protected; and that no irregularity in giving notice or in the vote, or in any other act necessary to give the commissioners power, could be set up in defense of their payment. But how do these decisions affect the other conditions, aside from the petition, the notice of the election, and the vote? They are not conditions to be performed before subscription or before the bonds are issued in payment therefor. The building and equipping of the road through the township, and the building and equipping of the road to a point at or near the city of Vincennes, Indiana, were conditions that were not to precede, but to follow the subscription and the issue, and were not essential to the exercise of the power to subscribe; and could only affect the liability on the subscription if not performed. It is a matter of history that railroad companies have often induced municipalities to issue their bonds before the conditions upon which they were to become payable, were performed. It was done in the faith that the railroad company had the ability and the disposition to comply with their undertakings, and keep the conditions. Railroad companies have often failed to keep the conditions. The bonds have passed into the hands of innocent holders for value, and the municipalities have been burthened and sorely oppressed by taxation to pay them, without any compensation or relief. But the act of the General Assembly, in force April 16, session Laws of 1869, page 316, §17, provides, among other things,

that in making subscriptions to railroad companies, "The municipality may impose conditions," and that subscriptions and bonds so made, shall not be valid or binding until such conditions are complied with." It is not unreasonable to suppose that this law was intended to protect municipalities in that class of cases to which we have just referred. To this act our Supreme Court have recently given an interpretation in the case of Town of Eagle v. Kohn et al. 84 Ill. 292. In that case suit was brought by Kohn et al. against The Town of Eagle, on interest coupons which had been attached to certain bonds issued by said town to the Plymouth, Kankakee & Pacific R. R. Co. In the vote for subscription were some conditions "that the road should be built through the town," "that a depot should be erected by the railroad company," and that bonds should be delivered as the work progressed. To this suit pleas were interposed, denying that the railroad company had kept and performed these conditions upon which the subscription had been voted, etc.

The court, after stating that the conditions were not prerequisite to making the subscriptions or issuing the bonds, "but only that the subscription and bonds were subject to the conditions," say: "The question, then, we conceive depends upon the above provision of the statute (April 16, 1869), giving the right to prescribe conditions upon which such bonds or subscription should be made, and declaring that such bonds or subscriptions shall not be valid and binding until such condition precedent shall have been complied with. What scope is to be given thereto? Whether is it to be confined in its operation to the railroad company to which the bonds shall issue, or extend to innocent holders for value. The words of the statute, by their natural force, apply to bonds under all circumstances, in whatever hands they may be. Courts are wont to allow to such peremptory language of a statute full force and effect, and when a statute expressly declares that a negotiable security, given under certain circumstances, shall be void, to hold them void, even in the hands of a *bona fide* endorser."

We have quoted at some length from this opinion, as it

Parker et al. v. Smith et al.

seems to be the first time this particular provision of the section of this act has received a construction as to the effect it has on negotiable securities in the hands of innocent holders, and answers fully the argument of appellees, that the issue of the bonds precludes all inquiry as to a compliance with the condition of the subscription, in a proceeding where innocent holders are interested.

It is insisted that the bond upon its face shows a compliance with the conditions, and that the tax-payers are estopped from questioning it.   We do not so read the bond.   The recital is, that it is issued by virtue of an act to incorporate the Paris & Danville Railroad Company, "and in accordance with a vote of the electors of said town," etc.   This recital may be, and perhaps is, strictly true, and under the rule would preclude any inquiry as to whether an election was held and a vote authorizing the bond to issue; but it cannot be said to conclude inquiry into the performance of a condition that was to be performed after the bonds issued; such a conclusion would be in direct conflict with the statute of 1869 and the decision of the Supreme Court under it.   And so in regard to the certificate of the supervisor, that entitles the bonds to registry.   The very act and the very section of the act that provides for the registry of the bonds, declares that such bonds shall not be valid until the conditions upon which they are issued shall have been complied with.   We may conclude this opinion in the words of the Supreme Court in Eagle v. Kohn, *supra*: "We think the proper construction here is to hold that by virtue of the express declaration of the statute, the bonds in question are not valid and binding until the conditions named shall have been complied with," and that no tax can be collected to pay interest on such bonds, though they may be in the hands of innocent holders.

The decree of the Circuit Court is reversed and the cause remanded.

Reversed and remanded.

WALL, J.   I do not concur in the foregoing opinion.