INSURANCE COMPANY *v.* BRUCE.

1. Where a city having by statute authority to make an unconditional subscrip tion to the stock of a railroad company, and to deliver its bonds in advance of the construction of the road, issued them, representing in effect by their recitals that they conformed to the statutory requirements, and that its liability thereon was complete, — *Held*, that the bonds are valid in the hands of a *bona fide* holder for value, and that the city is estopped from showing that it had imposed certain conditions upon its liability, although the statute declares that in such an event the bonds should not be binding until such conditions were performed.

2. *Town of Eagle* v. *Kohn* (84 Ill. 292) commented upon and distinguished.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

The facts are stated in the opinion of the court.

The case was argued by *Mr. Henry Hazlehurst* for the plaintiff in error, and by *Mr. Philip Phillips* for the defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action involves the liability of the town of Bruce, in the State of Illinois, upon sundry interest coupons, attached to bonds, in the ordinary form of negotiable municipal bonds. On the first day of December, 1870, they were delivered by the constituted authorities of the town to the Plymouth, Kankakee, and Pacific Railroad Company in payment of a subscription to the capital stock of the Kankakee and Illinois River Railroad Company. The latter company, after organization, became consolidated with the former, and hence the delivery to the consolidated company. The bonds upon their face recite that they are " issued by virtue of the law of the State of Illinois, entitled ' An Act to incorporate the Kankakee and Illinois River Railroad Company,' approved April 15, 1869, and 'An Act to fund and provide for paying railroad debts of counties, townships, cities, and towns, in force April 16, 1869 ; ' and we, the supervisor and town clerk of the township of Bruce, do hereby certify that a special election was held in said township on the seventh day of September, 1869, at which special election a majority of the legal voters, participating at the same, voted ' for subscription.' to the capital stock of the Kankakee and Illinois River Railroad Company in the sum of $25,000,

and to issue bonds of said township therefor; and said special election was by the proper authorities then and there duly declared carried 'for subscription,' and that all the other requirements of the law in relation to said special election were duly complied with."

The act of April 15, 1869, is the charter of the railroad company. By the sixteenth section thereof it is made the duty of the supervisor or clerk of any town or township, declaring by a majority of its voters in favor of subscription to the capital stock of the railroad company, to make the subscription, receive the proper certificates, and execute bonds therefor, which shall be delivered to the president or secretary of said railroad company for the use of said company, and shall be a pledge upon the revenue of said territories respectively. Sess. Laws Ill., 1869, vol. iii. p. 1.

The coupons in suit, before their maturity, to wit, on the 19th June, 1871, together with the bonds to which they are severally attached, were purchased by the American Life Insurance Company, the plaintiff in error, from one Alexander Whillden, the lawful and *bona fide* holder thereof, for the sum of $9,500 cash in hand paid. Neither Whillden nor the insurance company had any notice, at the time, of any irregularity, invalidity, or informality in the making, issuing, or delivery of the bonds.

It is not seriously disputed, either in the pleadings or in argument, that the acts of assembly referred to in the bonds gave ample authority for subscription by the town to the capital stock of the Kankakee and Illinois River Railroad Company, to be paid for in bonds of the town, provided a majority of legal voters, at an election previously called and held for that purpose, expressed their approval of such subscription and its payment in that mode. But the contention of the town is: 1st, That by the seventh section of the act of April 16, 1869, it is provided that " any county, township, city, or town shall have the *right*, when making any subscription or donation to any railroad company, to prescribe the conditions upon which such bonds and subscriptions or donations shall be made, and such bonds, subscriptions, or donations shall not be valid and binding until such conditions precedent

shall have been complied with : " 2d, That, in pursuance of
the authority thus given, the town voted to make a subscrip-
tion of $25,000, to be paid for in bonds, subject to the follow-
ing conditions, distinctly set forth in the notice under which
the election was held, and assented to by the railroad company,
viz.: that the road be so constructed as to pass through the
town, making Streater a point in a northwesterly direction
towards Bureau Junction ; that a depot be located and main-
tained in the town of Bruce ; that the bonds be delivered in
sums of $1,000 for every mile of road graded, as the work
progresses, and $1,000 for every mile of ties laid, and the
balance when the road-bed is ready for the iron ; and that no
further calls or assessments shall be made upon the town or
upon the subscription to stock over the amount aforesaid ;
provided, nevertheless, that the subscription be void and of no
effect unless an agreement by the railroad company for said
iron and rolling-stock with responsible parties shall be made
on or before one year from the day of the election, and the
railroad company shall have formed satisfactory arrangements
to connect said railroad with some eastern terminus : 3d, That
the conditions thus prescribed have never been complied with
in these respects ; more than one year elapsed after the elec-
tion and yet no agreement had been made on or before Sept.
7, 1870, by the original or consolidated company, with any
party for the iron or the rolling-stock of the railroad ; the road
was never so constructed as to pass through the town of Bruce;
it was not constructed when the bonds were issued, and has
never been constructed at any time since ; no depot has ever
been located or maintained in the town ; the ties were never
laid for any one mile of the railroad within the town ; and no
part of the railroad for the line of railroad of the Kankakee
and Illinois River Railroad Company, or of the original line
of the original Plymouth, Kankakee, and Pacific Railroad, has
ever been constructed.

These facts are set out in detail in the special plea of the
town.    Do they constitute a defence against a *bona fide*
holder, for value, of the bonds and their coupons ?    Or to state
the question more distinctly, can the town, after the bonds
have been signed, sealed, and delivered by its constituted

authorities to the railroad company, and have passed into the hands of *bona fide* holders for value, escape liability by showing that the conditions or some of them imposed by popular vote have not been complied with upon the part of the railroad company?

The statute did not make it obligatory on the town to impose conditions upon the performance of which its liability should depend. It conferred simply the right to do so, leaving the town at liberty to prescribe conditions or to make an unconditional subscription. Consistently with the statute the town could issue and deliver bonds for the subscription in advance of the construction of any part of the road. But when conditions were prescribed, good faith, and the obligations which everywhere arise out of negotiable securities, required — if the town intended to rely upon them — that the public, who were expected to buy the bonds or to advance money upon them, should be informed by their recitals that the town had exercised its statutory right to impose conditions upon its liability. The officers both of the town and the railroad company knew, however, that bonds could not have been negotiated in the market had their recitals disclosed the fact that payment depended upon conditions thereafter to be fulfilled by the railroad corporation. To the end, therefore, that money might be raised for the construction of the proposed road, or in reliance upon the performance by the railroad company of the conditions imposed, the constituted authorities of the town, and the officers or agents of the company, co-operated in putting out bonds negotiable in form and with recitals that gave no intimation even that the subscription was conditional. The fact that conditions had been prescribed was omitted in recitals, full of everything necessary to induce the public to buy the bonds. The statement, on the face of the bonds, that they were issued by virtue of the statutes of April 15, 1869, and April 16, 1869, — the first of which contains *an absolute requirement that the bonds be issued and delivered upon the subscription being voted*, while the second gives the *right*, but does not make it imperative, to impose conditions, — and the further statement that the people had voted for subscription *and to issue township bonds therefor*, fairly imported that nothing

remained to be done in order to make the bonds binding obligations upon the town in the hands of *bona fide* purchasers. Under these circumstances, the town, by every principle of justice, is estopped, as against a *bona fide* holder, to plead conditions, the existence of which was withheld from the public, either to facilitate the negotiation of the bonds in the markets of the country, or because it had full confidence that the railroad company would meet the prescribed conditions. It should not now be heard to make a defence inconsistent with the representations contained in the recitals upon its bonds, or upon the ground that the conditions imposed, of which purchasers had no notice, have not been performed.

But this conclusion, it is contended, is in the face of the express declaration in the act of April 16, 1869, that subscriptions or donations made and bonds issued, upon conditions, " shall not be valid and binding until such conditions precedent shall have been complied with." And in support of that contention counsel cite *Town of Eagle* v. *Kohn* (84 Ill. 292), in which case one of the justices dissented and another did not sit. That case involved the liability of the town of Eagle upon certain coupons of bonds issued to the same railroad company. The defence was there, as here, non-compliance with certain conditions which had been attached by popular vote to the subscription. The court, construing that act, held that there was *no want of power* to make the subscription and issue bonds; that, if the town so willed, *the subscription could be made and bonds issued in advance of the compliance with any condition imposed by the popular vote;* that, aside from the statute, innocent purchasers for value would enjoy the protection accorded to *bona fide* holders of negotiable paper, and would not be affected by non-compliance with such conditions; that such holders could not be required to take notice of the conditions or of any resolution relating to them upon the records of the railroad company ; but that, in view of the express provision of the statute that the bonds should not be " valid and binding until such conditions precedent shall have been complied with," non-compliance therewith is a good defence, even against purchasers in good faith for value. The decision in that case was made

several years after the bonds had been put on the market, but being a construction of a local statute, it is insisted that the Federal court is bound to accept it as controlling in the present case. We waive discussion as to the soundness of the conclusion reached by the State court, or any extended examination of the authorities bearing upon the general question whether the Federal court is concluded by the construction given by the State court to a local statute, under which rights have accrued to citizens of other States before that construction was given. We do this because the present case is distinguishable from *Town of Eagle* v. *Kohn* in this, that it does not appear, from the report of the latter case, that the town had, by the recitals in its bonds, estopped itself from asserting, as against a *bona fide* holder, the non-performance of conditions imposed by popular vote. Had the town of Eagle represented, in express words, upon the face of the bonds, that no conditions whatever were prescribed by the people, or that the subscription was unconditional, the State court would not, we suppose, adjudge that the town, as against a *bona fide* holder, could take shelter behind the statutory provision in question. In the present case, the town of Bruce did not make, in express terms, a representation of that character. But, in effect, by the recitals in its bonds, it did represent to the public that the bonds were issued in all respects in conformity to law, and that nothing remained to be done which was essential to its liability thereon. The town having power, under the statute, to make an unconditional subscription, and to issue and deliver its bonds in advance of the construction of the road, what was said in *Brooklyn* v. *Insurance Company* (99 U. S. 362) may be repeated here: " It is now too late for the town to claim exemption, as against *bona fide* purchasers, upon the ground that the railroad company disregarded its promise to construct the road, or upon the ground that its own officers delivered the bonds in violation of special conditions, of which the purchasers had no knowledge or notice, either from the statute or otherwise."

*Judgment reversed, with directions for further proceedings in conformity with this opinion.*

MR. JUSTICE MATTHEWS and MR. JUSTICE GRAY did not sit in this case, nor take any part in deciding it.