# THE UNION NATIONAL BANK OF CHICAGO

## *v.*

# THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY.

*Filed at Ottawa, May .9, 1893.*

1. USURY—*contract held usurious.* In 1890 a railway corporation of this State negotiated with a national bank of the State for a loan of $150,000 for six months. It was verbally agreed that the bank should discount from the sum six per cent, and that the railway company should endeavor to secure another railway company as a depositor with such bank, and in case it failed to do so, the bank should have, in lieu of such deposit, two and one-half per cent upon the $150,000 in addition to said six per cent thereon. In pursuance of such agreement the railway corporation gave the bank its note for $150,000, payable six months after date, secured by collaterals, and such sum, less six per cent, was entered to the credit of the company by the bank. The note was afterward paid, but such other railway company was not secured as a depositor, and the bank sued to recover the two and one-half per cent on the loan. *Held,* that no recovery could be had, for the reason that the contract reserved a greater rate of interest than that allowed by the laws of this State or by the laws of the United States.

2. Where a bank loaned a railroad corporation $150,000 for six months, discounting the loan six per cent per annum and taking a note for the entire loan, and the president of the railroad corporation orally agreed with the bank to have another railway company make its deposits in the bank, or to pay a commission of 2½ per cent of the loan, there being no agent or broker employed, it was held that the agreement of the president of the railroad company to procure such a depositor or pay the 2½ per cent, was in consideration of the loan, and that such per cent was intended as additional interest on the loan.

3. SAME—*determined by the laws of the State and United States—as to national banks.* The laws of the State are referred to by the National Bank act in such way, that in order to determine whether the defense of usury can be set up in any given case under the latter act, the statutes of both must be considered.

4. SAME—*rate of interest allowed by statute.* Prior to the act of 1891, the statute of this State limited the rate of interest which might lawfully be contracted for, to six per cent when the contract was oral, and to eight per cent when it was in writing, whoever the debtor might be; and national banks were by section 5197 of the Federal Statutes limited to the same rates, and by section 5198, for reserving or charging a greater rate than thus fixed, were subjected to a forfeiture of all the interest

agreed to be paid, and made liable to the debtor, in case the interest had been paid, in double the amount of the interest received.

5. The rate of interest which may be taken, reserved or charged, whether the borrower or debtor is a natural person or a corporation, is fixed by the laws of this State, and the case does not come within that provision of section 5197 of the Revised Statutes of the United States, which allows national banks to take or charge interest at a rate not exceeding seven per cent when no rate is fixed by the laws of the State.

6. SAME—*power of corporation to plead usury.* By the statute of 1879 of this State, the rate of interest is expressly limited to six per cent per annum in all cases where the agreement in respect to interest is not in writing, and where the contract is in writing, eight per cent is allowed to be stipulated for, and no more, and the reservation of any greater rate of interest than is thus limited, is made unlawful. This applies as well to contracts of corporations for the payment of interest, as to individuals, so that it can not be said that when a corporation is the debtor, no rate of interest is fixed by the laws of this State, although a corporation may not set up the defense of usury by seeking to enforce the penalty imposed by section 6 of the statute.

7. While a corporation can not enforce the forfeitures imposed by our usury laws, it does not follow that the statutory prohibition against exacting more than the lawful rates of interest has no application to corporations. The prohibition is general, and applies by its terms to every person or corporation; and no contract, whoever may be the parties to it, can be so framed as to provide for the reservation of more than the rates of interest allowed by the statute, without being in contravention of the statute and unlawful.

8. Because the debtor, who has agreed to pay more than the legal rate of interest, is a corporation, and therefore incapable of interposing the defense of usury, the law will not hold the contract lawful and enforce it according to its terms. No agreement between parties to do a thing prohibited by law or subversive of any public interest which the law cherishes, will be judicially enforced.

9. Our statute in relation to interest contains both a prohibition and a penalty; and where the party agreeing to pay illegal interest is a corporation, the penalty can not be invoked in its favor, but the prohibition remains wholly unaffected by the provisions of section 11, which takes from corporations the right to interpose the defense of usury.

10. CONTRACTS—*void if in violation of a statutory prohibition.* A statute may render an agreement illegal in one of two ways, viz.: by express prohibition, or by the imposition of a penalty. Where the statute provides a penalty for an act, a contract for the performance of such act is void, although the statute does not pronounce it so, or prohibit it in express words.

14—145 ILL.

11.  The force and efficacy of the statute limiting the rate of interest, and the binding nature of its prohibition, does not depend upon the penalty it imposes for disobedience to its provisions. Whatever a statute forbids becomes unlawful, whether a penalty is annexed as a consequence of disobedience or not.

12.  Any act which is forbidden, either by the common or the statutory law, whether it is *malum in se* or merely *malum prohibitum*, whether indictable or only subject to a penalty of forfeiture, or however otherwise prohibited by the statute or the common law, can not be the foundation of a valid contract.

13.  If the subject matter of an agreement be such that a performance of it would either consist in doing a forbidden act, or be so connected therewith as to be in substance part of the same transaction, the law will not require the parties to perform such agreement. When the act is expressly prohibited by statute, a contract to perform, or in furtherance of the prohibited act, is illegal and unenforcible.

14.  INTEREST—*parol contract therefor.* Where a promissory note provides for the payment of six per cent interest, or all that could be taken by parol, an oral agreement for any further interest is in violation of the statute.

15.  EVIDENCE—*action on contract in writing—evidence of a parol cotemporaneous contract.* Where a loan of money and its terms are evidenced by a promissory note which has been paid and satisfied, the payee of the note can not recover a further sum upon a parol contract made at the same time the note was given, and upon the same consideration, for the reason, a recovery would necessarily involve the admission of evidence of a cotemporaneous parol contract.

16.  Where parties deliberately put their engagements into writing in such terms as to import a legal obligation, without any uncertainty as to the extent or object of their undertaking, it will be conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing, and oral testimony of a previous *colloquium* between them, or of conversations or declarations at the time the writing was completed, will be rejected.

17.  But when it appears that the writing was not intended by the parties as an embodiment of their contract, but only a part, or of some incidental matter connected with it, the rule excluding evidence of a cotemporaneous parol agreement has no application.

APPEAL from the Appellate Court for the First District; —heard in that court on appeal from the Circuit Court of Cook County; the Hon. S. P. MCCONNELL, Judge, presiding.

This was a suit in assumpsit, brought by the Union National Bank of Chicago, against the Louisville, New Albany and Chicago Railway Company, a corporation existing under the laws of the State of Illinois. To the declaration, which consisted of the common counts, including a count for interest, the defendant pleaded *non assumpsit*, and two special pleas.

By the first plea it was alleged, in substance, that the plaintiff is a national bank existing under the laws of Congress; that the several causes of action in the declaration set forth are one and the same, viz., the cause of action alleged in the first count; that before the making of the promises in that count mentioned, it was corruptly and unlawfully agreed between the plaintiff and defendant, that the plaintiff should loan to the defendant the sum of $150,000, and should forbear the same for the period of six months from that day, and that for such loan and forbearance, the plaintiff should retain six per cent of the $150,000, and that in addition thereto, the defendant should pay two and one-half per cent commission, making in all eight and one-half per cent, to be paid by the defendant as interest on the loan, and that to secure the payment of the $150,000 and the six per cent discount, the defendant should make and deliver to the plaintiff its promissory note therefor; that in pursuance of this unlawful and corrupt agreement, the plaintiff then and there loaned to the defendant the sum of $150,000, and deducted and retained six per cent thereof, and the defendant executed and delivered to the plaintiff its promissory note for the full sum of $150,000, which was fully paid at maturity, and that this suit is brought to recover the two and one-half per cent in addition to the six per cent so taken and retained by the plaintiff; that the six per cent deducted and the two and one-half per cent now sued for exceed the rate of $7 for the forbearance of $100 for one year, contrary to the laws of Congress in relation to national banks, by means

whereof, and by force of the statute, the promises in the declaration alleged are wholly void in law.

The second special plea sets out the provisions of sections 5197 and 5198 of the Revised Statutes of the United States, and alleges, in substance, that there is no law in the State of Illinois fixing or limiting the rate of interest which the defendant, as a corporation, may agree to pay, the defendant being expressly exempted and excluded from the law of the State fixing the rate of interest; that by reason thereof, the provisions and limitations provided by the laws of Congress apply, and especially prohibit the plaintiff, as a national bank, from charging or receiving interest to exceed the rate of seven per cent per annum: that the several causes of action alleged in the declaration are one and the same, viz., the one alleged in the first count; that before the making of the promises in that count alleged, it was corruptly and unlawfully agreed between the plaintiff and defendant, that the plaintiff should lend to the defendant $150,000, and should forbear the same for six months from that date, to-wit, from September 17, 1890, and that, for such loan and forbearance, the plaintiff should retain six per cent as for interest, out of the $150,000, and that in addition thereto, the defendant should secure for the plaintiff the deposits of the Chicago and Western Indiana Railroad Company, and in case of failure to secure for the plaintiff that company as a depositor, the defendant should pay the further sum of two and one-half per cent for said loan and forbearance; that to secure the payment as aforesaid of the $150,000, and the interest discount of six per cent thereon, the defendant should make and deliver its promissory note therefor to the plaintiff; that on the day aforesaid, in pursuance of said corrupt and unlawful agreement, and in violation of the provisions of the laws of Congress, the plaintiff then and there loaned to the defendant $150,-000, and deducted therefrom as interest six per cent thereof, and the defendant executed and delivered to the

plaintiff its promissory note for $150,000, which it fully paid and discharged at maturity; that the defendant did not secure the Chicago and Western Indiana Railroad Company as a depositor of the plaintiff, and this suit is brought to recover, in addition to the six per cent so taken and retained by the plaintiff, the two and one-half per cent aforesaid.

The cause coming on for trial before the court, a jury having been waived, it was stipulated by the parties that issues in the cause should be deemed to have been made and joined, as to the special pleas, the same as if formal replications, denying each traversable allegation, had been filed. The cause was then tried by the court upon the following facts admitted by stipulation:

"On or about September 17, 1890, William L. Breyfogle, then president of the Louisville, New Albany and Chicago Railway Company, verbally arranged with the Union National Bank of Chicago for a loan of one hundred and fifty thousand dollars to said railway company, the repayment thereof to be secured by collateral security in the form of three hundred bonds of the general gold bonds of the Louisville, New Albany and Chicago Railway Company, said bonds being in the denomination of one thousand dollars each.

"It was verbally agreed in this arrangement that the bank should discount from this one hundred and fifty thousand dollars interest at the rate of six per cent per annum, and that Mr. Breyfogle, president of the railway company, should endeavor to secure the Chicago and Western Indiana Railway Company as a depositor with said Union National Bank, and in case he failed so to do, the said bank should have in lieu of such deposit a commission of two and one-half per cent upon said $150,000, in addition to said six per cent thereon. The deposits of the Chicago and Western Indiana Railway Company would have been valuable to the said bank as a part of its business, and it declined to make the said loan, except upon the terms above stated.

"After this arrangement had been thus agreed upon, Mr. Lewis, the treasurer of the railroad company, filled out a note for one hundred and fifty thousand dollars, dated September 17, 1890, payable six months after date, to the order of the Union National Bank, describing the collateral security, and providing that after maturity the note was to draw interest at the rate of 8 per cent per annum, the note being as follows:

$150,000.$\frac{00}{}$.      CHICAGO, Illinois, Sept. 17th, 1890.

Six months after date, for value received, we promise to pay the Union National Bank, of Chicago, or order, one hundred and fifty thousand dollars, in gold coin, or U. S. notes, or Treasury notes, which are a legal tender, at its office in Chicago, with interest at the rate of eight per cent per annum after due, having deposited with it as collateral security (being the legal holder) for the payment thereof, and also for all other present or future demands of any kind of the said bank against the undersigned, due or not due, three hundred thousand dollars general mortgage gold bonds of the Louisville, New Albany and Chicago Railway Company, being 300 bonds of $1,000 each, Nos. 11,196 to 11,495, inclusive, the market value of which is now $.............. Said bank has the right to call for additional security satisfactory to it, and if the same is not furnished on demand may, at its option, declare this note immediately due and payable, without notice to us.   And we hereby give the said Union National Bank of Chicago, or its assigns, full power and authority, on the maturity of this note, or at any time thereafter or before, at discretion, to collect or otherwise convert said securities, or either, or any part of them, or any substitutes therefor, or any aditions thereto, or in the event of said securities depreciating in value, to sell said collateral securities, or any portion thereof, at public or private sale, at the discretion of said bank, without advertising the same or otherwise giving notice to us (and the said bank may become the

purchaser at any public sale), and said bank shall apply the proceeds, after the payment of all expenses attending said collection, conversion or sale of the said collateral securities, to the payment of this note, with all interest due thereon, and return the overplus, if any, to us, and in case the proceeds of said collection, conversion or sale of said collateral security shall not cover the principal, interest and expenses, we agree to pay the deficiency forthwith.

LOUISVILLE, NEW ALBANY & CHICAGO RY. CO.,

(Signed)       By WM. L. BREYFOGLE,

*President.*

W. H. LEWIS,

*Secretary.*

Union National Bank, Chicago, 23 Mar., 1891.   Paid.

"After this note had been duly prepared by Mr. Lewis and executed by the railroad company, he took the note to the bank, and the bank accepted said note and placed the amount thereof, less the interest for six months at the rate of 6 per cent as above stated, to the credit of the said railroad company. Upon the maturity of said note said loan was extended for thirty days by a further note of the same amount prepared by Mr. Lewis in the manner as the first note was prepared and delivered by him. That note being similar in form with the one above set forth.

"Upon the delivery of this second note to the bank the first note was canceled in the following words: 'Union National Bank, Chicago, 23 March, 1891. Paid,' and returned to the railroad company.

"Upon the maturity of this second note the same was paid to the bank by the treasurer of the railroad company, according to its tenor and effect, and upon such payment said second note and the three hundred thousand dollars of bonds therein named as collateral security were returned to the said treasurer, as the proper officer of said railroad company to receive the same, and said second note was marked canceled and paid. The Chicago & Western Indiana Rail-

way Company was not secured as a depositor with the said bank, nor has any part of the said commission of two and one-half per cent been paid.''

The foregoing being all the evidence offered, the plaintiff submitted to the court the following propositions, to be held as the law in the decision of the case:

''1. The court finds, as a matter of law, that no corporation organized under the laws of Illinois can interpose the defense of usury in any action, even though the plaintiff in such action (the lender) be a national bank organized under the act of Congress establishing national banks.

''2. The courts finds, as a matter of law, that if in consideration of the making of the loan in controversy by the plaintiff to the defendant the defendant agreed that in addition to paying six per cent interest on said loan, it would secure the Chicago & Western Indiana Railway Company as a depositor of plaintiff, which said deposit account would have been of value to plaintiff, or, failing to secure such account, would pay plaintiff a commission of two and one-half per cent on said loan in addition to said six per cent interest, this would not constitute usury or defeat a recovery by plaintiff, unless it should appear, by a preponderance of the evidence, that such arrangement, was a mere shift or cover or device to evade the statute against usury, or the provisions of the National Banking act, or that such was the intent or purpose of the parties, or one of them.''

The court refused to hold these propositions, but, at the request of the defendant, held the following:

''The court holds, as a matter of law, that a national bank in Illinois has no legal right or authority to charge or receive interest in this State to exceed the rate of eight per cent, and that the statute of this State which denies to corporations the right to plead usury can not expand the authorities of national banks touching this subject, as conferred by and fixed in the National Banking act.''

The court thereupon found the issues for the defendant, and after denying the plaintiff's motion for a new trial, gave judgment in favor of the defendant for costs. On appeal to the Appellate Court that judgment was affirmed, and this appeal is from the judgment of affirmance.

Messrs. Willetts, Robbins & Case, for the appellant:

Parol evidence, in aid or explanation of a writtten contract, is properly received if not objected to. *Daggett* v. *Gage,* 41 Ill. 465; *Hills* v. *Marlborough,* 40 Vt. 648; *Concord* v. *McEntire,* 6 N. H. 527; *Woodward* v. *Shaw,* 18 Me. 304; *Barshaer* v. *Forbes,* 36 Md. 154; *Shaw* v. *Stone,* 1 Cush. 228.

The rule excluding parol evidence does not apply when the contract was verbal and entire, and a part only of it was reduced to writing. 1 Greenl. on Evid., sec. 284 *a.*

For other instances, when such evidence is competent. *Ludke* v. *Sutherland,* 87 Ill. 481; *Witbeck* v. *Waine,* 16 N. Y. 532; *Laflin* v. *Howe,* 112 Ill. 253; *Ellis* v. *Sisson,* 96 id. 105; *Birks* v. *Gillett,* 13 Bradw. 369; *Chapin* v. *Dobson,* 78 N. Y. 74.

As to the proper construction of the United States statutes, see *Tiffany* v. *Nat. Bank,* 18 Wall. 409; *Hinds* v. *Marmolizo,* 60 Cal. 229; *Nat. Bank* v. *Bruhn,* 64 Tex. 571; *Newell* v. *Nat. Bank,* 12 Bush, 57; *Wiley* v. *Starbuck,* 44 Ind. 298; *Farmers' Bank* v. *Deering,* 91 U. S. 29; *Rosa* v. *Butterfield,* 33 N. Y. 665; *Johnson* v. *Bank,* 74 N. Y. 329.

Whether the contract is usurious is a question under the federal statute. *Nat. Bank* v. *Johnson,* 104 U. S. 271; *Bank* v. *Deering,* 91 U. S. 29; *Central Bank* v. *Pratt,* 115 Mass. 539; *Hintermister* v. *Bank,* 64 N. Y. 212; *First Nat. Bank* v. *Childs,* 133 Mass. 248.

When the contract under certain contingency may or may not provide for usury, the question of intent to evade the usury laws will depend upon the proof, and the *onus* is upon

the party relying on usury to prove the guilty intent. *Cockle* v. *Flack*, 93 U. S. 344; *Matthews* v. *Cole*, 70 N. Y. 239; *Davis* v. *Rider*, 53 Ill. 416; *Spain* v. *Hamilton*, 1 Wall. 604.

"It is settled law that when the promise to pay a sum above legal interest depends upon a contingency and not upon the happening of a certain event, the loan is not usurious." See, also, *Matthews* v. *Cole, supra*; *Norwood* v. *Faulkner*, 22 S. C. 367; *Thurston* v. *Cornell*, 38 N. Y. 281; *Atlanta Co.* v. *Gwyer*, 48 Ga. 9.

Mr. G. W. KRETZINGER, for the appellee:

The National Banking act adopts the rates allowed and fixed by sections 1 and 4, but does not in any manner or degree recognize or give any force or effect to the penalties or exemption of defense provided in sections 6 and 11. The national banking act provides its own forfeitures and penalties, and therefore excludes sections 6 and 11 from all consideration in the class of cases to which the one at bar belongs.

Section 5 simply recites a prohibition against the violation of sections 1 and 4, by any person or corporation, without fixing any penalty therefor. Sections 1 and 4 fix the rate of interest, and the only provisions of the State law which the National Banking act refers to or deals with, are the provisions that fix the rates of interest allowed to be charged by natural persons or corporations, including State banks.

Plaintiff has already received 6 per cent on the loan, and now seeks to recover two and a half per cent additional, making in all eight and a half per cent, being two and a half per cent in excess of the highest rate of interest which the law of this State permitted natural persons or corporations, including State banks, to charge or receive upon verbal contracts, and being one-half per cent in excess of the highest rate which the law permitted.

If a verbal agreement, as pleaded and offered in evidence, calls for interest at a rate higher than six per cent, and therefore exceeds the rate limited in such case by sections 1 and 2, or if the written contract pleaded or offered in evidence shows upon its face a rate higher than eight per cent, and thus violates and is offensive to section 4 of our statute, the court will refuse to enforce the same, even though the penalties and forfeitures provided in section 6 are not pleaded, or even though the defendant is a corporation, and therefore prohibited from pleading the same by force of section 11, and in either case the verbal or written agreement will be wholly disregarded by the court, and plaintiff can only recover six per cent, the legal rate provided in sections 1, 2 or 4, as if no attempt had been made to fix such illegal rate by contract.

All verbal contracts providing for a higher rate than fixed and limited in and by sections 1 and 2, and all written contracts providing a rate in excess of the rate fixed in section 8, are equally illegal, whether the borrower is a natural person or a corporation, and neither will be enforced by the court, the only difference being that a natural person may plead the penalties provided in section 6, and thus compel the plaintiff to lose the entire interest, while as to defendant corporations the court will simply disregard the contract—will not enforce the forfeiture of the entire interest, but will permit the plaintiff only to recover against the corporation interest at the legal rate fixed by sections 1 and 2, the same as if no contract rate in excess of such statutory rates had been agreed upon.

That if section 11 of our statute, which excludes corporations in this State from the benefit of the usury law, has the force and effect given it by counsel for plaintiff, it follows that as to defendant corporations they are set free from the limitations contained in sections 1, 4 and 5 of our statute, and therefore, as to such defendant corporations, there is no statute in this State fixing or limiting the rate of interest they may agree to pay.

The plaintiff's charge of eight and one-half per cent is expressly prohibited under the first restriction, without reference to the usury laws of this State; the plaintiff violated the second restriction of the national banking law by charging more than seven per cent.

The first defense here offered does not proceed upon the usury law of this State, but depends upon the first limitation contained in section 30 of the National Banking act, namely, that plaintiff can only charge or receive interest at the rate allowed and fixed by sections 1 or 4 of the interest laws of this State, and no more.

The second defense here offered proceeds upon the ground that if the rates of interest fixed and prescribed by sections 1, 4 and 5 of our statute are set free as to corporations by force and virtue of section 11, which prohibits such corporations from claiming or demanding the enforcement of such limitations or prohibitions, then no rate of interest is fixed by the law of this State as to such corporations, and plaintiff is prohibited by the second restriction in section 30 of the National Banking act from charging any rate in excess of seven per cent.

Part of contract can not rest in writing, and another part in parol; a written agreement can not be changed, modified or added to by evidence of declarations or promises made at or before the execution of such writing.   The loan of $150,000 was the sole, single and indivisible consideration moving from the bank; it was an indivisible subject matter of the contract.   The promissory note executed as evidence of this transaction purported to represent the full subject of the agreement, and to recite all terms essential to a complete and enforcible written contract.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the Court:

The judgment of the Circuit Court was affirmed by the Appellate Court on the ground that a recovery by the plaintiff would necessarily involve the admission of evidence

of a cotemporaneous parol contract to modify and add to the terms of the written contract. The loan from the plaintiff to the defendant, and its terms, were evidenced by a promissory note, and that note was an agreement in writing, by which the defendant, for the consideration therein expressed by the words "value received," promised to pay the plaintiff, six months after date, the sum of $150,000 in gold coin. The note having been paid and satisfied, the plaintiff now seeks to recover upon a parol contract, made at the same time and upon the same consideration, by which the defendant agreed to pay the plaintiff a further sum, equal to two and one-half per cent of the money loaned. We are strongly inclined to concur with the Appellate Court in the view, that to enforce such parol contract would violate the well established rule that where parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing, and that all oral testimony of a previous colloquium between the parties, or of conversations or declarations at the time when it was completed, must be rejected.

The case does not seem to us to come within the exception frequently recognized, that where it appears that the writing was not intended by the parties as an embodiment of their contract, but of only a part, or of some incidental matter connected with it; the rule excluding evidence of a cotemporaneous parol agreement does not apply. The transaction between the parties here was a loan of money, to be repaid at a stipulated time, with a stipulated rate of interest. All of these matters are embodied in the note, and the plaintiff is now insisting that in addition to the interest reserved in the note, there was a cotemporaneous agreement, not embodied in the writing, that a further sum,

by way of interest on the loan, was to be paid. If there had been in fact an oral agreement to repay the loan at the end of six months with eight per cent interest, and the note had been executed and delivered, as in fact it was, evidencing an agreement to repay the loan, six months after date, with six per cent interest, no one, we think, would claim that the oral agreement could be proved. The admission of such evidence would be a palpable violation of the rule that an oral cotemporaneous agreement can not be proved for the purpose of changing the terms of the agreement as reduced to writing. But the case supposed does not seem to us to differ in principle from the one now under consideration. The oral agreement now sought to be enforced has relation merely to a portion of the interest, and as the agreement for interest was embodied in the note, the oral proof would only tend to show that the actual agreement of the parties in respect to interest was different from the one evidenced by the written agreement.

The point is made in this court, which does not seem to have been urged in the Appellate Court, that the defendant, by stipulating that there was an oral contract for the payment of the money now sought to be recovered, has waived its right to object to the introduction of evidence of such contract. But as we are disposed to place our decision on other grounds, we have not deemed it necessary to consider that contention with care, or to express any decided opinion in relation to it.

The substantial controversy in the case is, whether the agreement to pay the money now sought to be recovered, admitting that such agreement was made, was usurious and therefore void. According to the stipulation, the agreement was, in effect, that the defendant, in addition to paying the six per cent interest provided for in the note, should secure for the plaintiff as a depositor the Chicago and Western Indiana Railroad Company, a service which it is admitted would have been of value to the plaintiff, or, in

case of its failure so to do, the plaintiff should be paid, in lieu of such deposit, two and one-half per cent commission upon the money loaned. There can be no doubt that this payment, though attempted to be disguised under the name of "commission," was in legal effect an agreement to pay a sum additional to the six per cent, as the consideration or compensation for the use of the money borrowed, and is to be regarded as, to all intents and purposes, an agreement for the payment of additional interest.

The defense of usury set up by the pleas, is based upon the provisions of the National Bank act, and not upon the usury laws of this State. Indeed, as is admitted, the defendant being a corporation, is prohibited by section 11 of our statute in relation to interest, to interpose the defense of usury under that statute. But the laws of the State are referred to by the National Bank act in such way, that in order to determine whether the defense of usury can be set up in any given case under the latter act, the provisions of both statutes must be considered. Sections 5197 and 5198 of the Revised Statutes of the United States, so far as they are material to the questions now under consideration, are as follows:

"Sec. 5197. Any association may take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at the rate allowed by the State, Territory or district where the bank is located, and no more, except that where by the laws of any State a different rate is limited for banks of issue organized under the State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this title. When no rate is fixed by the laws of the State, Territory or district, the bank may take, receive, reserve, or charge a rate not to exceed seven per centum, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run.

"Sec. 5198. The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of interest thus paid from the association taking or receiving the same; provided, such action is commenced within two years from the time the usurious transaction occurred."

Sections 2, 4, 5, 6 and 11, of the statute of this State in relation to Interest, in force at the date of the contract in question, were as follows:

"Sec. 2. Creditors shall be allowed to receive at the rate of six per centum per annum, for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment.

"Sec. 4. In all written contracts it shall be lawful for the parties to stipulate or agree that eight per cent per annum, or any less sum of interest, shall be taken and paid upon every one hundred dollars of money loaned, or in any manner due and owing from any person or corporation to any other person or corporation in this State, and after that rate for a greater or less sum, or for a longer or shorter time, except as herein provided.

"Sec. 5. No person or corporation shall directly or indirectly accept or receive, in money, goods, discounts or thing in action, or in any other way, any greater sum or

greater value, for the loan, forbearance or discount of any money, goods or thing in action, than as above prescribed.

"Sec. 6. If any person or corporation in this State shall contract to receive a greater rate of interest or discount than eight per cent upon any contract, verbal or written, such person or corporation shall forfeit the whole of said interest so contracted to be received, and shall be entitled only to recover the principal sum due to such person or corporation; and all contracts, executed after this act shall take effect, which shall provide for interest or compensation at a greater rate than herein specified, on account of non-payment at maturity, shall be deemed usurious, and only the principal sum due thereon shall be recoverable.

"Sec. 11. No corporation shall hereafter interpose the defense of usury to any action."

It will be observed that by section 2 of our statute, creditors are allowed to receive interest at the rate of six per cent per annum on money lent to the use of another, and by section 4, it is made lawful, in all written contracts, to agree that interest at the rate of eight per cent per annum shall be taken and paid. By section 5, all persons and corporations are prohibited from accepting or receiving, either directly or indirectly, any greater rate for the loan, forbearance or discount of money than is prescribed in the preceding sections. The rate of interest is thus expressly limited to six per cent per annum in all cases where the agreement in respect to interest is not in writing, and where the contract is in writing, eight per cent is allowed to be stipulated for and no more, and the reservation of any greater rate of interest than is thus limited, by any person or corporation, is made unlawful by express statutory prohibition.

But it is urged that the effect of section 11, which prohibits corporations from interposing the defense of usury, is to

create an exception in cases where corporations are debtors, so as to take all cases of that character out of the operation of the statute. The theory seems to be, that because a corporation can not set up usury as a defense, any person or corporation dealing with a corporation, may lawfully exact such rate of interest as may be agreed upon, whether in excess of the statutory limit or not, so that,where a corporation is the debtor, no rate of interest is fixed by the laws of this State. To this view we are totally unable to yield our assent.

The defense of usury is made by setting up and seeking to enforce the forfeiture or penalty imposed by section 6 of the statute. That, doubtless, a corporation can not do. But the force and efficacy of the statute, or the binding nature of its prohibitions, does not depend upon the penalty which it imposes for disobedience to those provisions. Whatever a statute forbids becomes unlawful, whether a penalty is annexed as a consequence of disobedience or not. While corporations can not enforce the forfeitures imposed by our usury laws, it does not follow that the statutory prohibition against exacting or paying more than the lawful rates of interest has no application to them. The prohibition is general, and applies by its terms to every person or corporation, and no contract, whoever may be the parties to it, can be so framed as to provide for the reservation of more than the rates of interest allowed by the statute, without being in contravention of the statute, and therefore unlawful.

Nor does it follow that, because the debtor who has agreed to pay more than the legal rate of interest is a corporation, and therefore incapable of interposing the defense of usury, the law will treat the contract as valid and enforce it according to its terms. No agreement between parties to do a thing prohibited by law, or subversive of any public interest which the law cherishes, will be judicially enforced. The general rule therefore is, that any

act which is forbidden either by the common or the statutory law, whether it is *malum in se* or merely *malum prohibitum;* whether indictable or only subject to a penalty or forfeiture, or however otherwise prohibited by statute, or the common law, can not be the foundation of a valid contract. Bishop on Contracts, secs. 470, 471, and authorities cited in notes. "If the subject matter of an agreement be such that a performance of it would either consist in doing a forbidden act, or be so connected therewith as to be in substance part of the same transaction, the law can not command the parties to perform such agreement. It will not always command them not to perform it, for there are many cases where the performance of the agreement is not in itself an offense, though the complete execution of the object of the agreement is; but, at all events, it will give no sort of assistance to such a transaction." 3 Am. & Eng. Encyc. of Law, 869. "Where an act is expressly prohibited by statute, a contract to perform or in furtherance of the prohibited act is illegal and unenforcible." Lawson on Contracts, sec. 279. See also cases cited in note 1.

A statute may render an agreement illegal in one of two ways, viz., by express prohibition or by the imposition of a penalty. Anson on Contracts, 172. Where the statute does no more than impose a penalty upon the carrying out of the objects of the contract, a question has sometimes arisen whether or not the imposition of the penalty of itself amounts to a prohibition, although the weight of authority would seem to be, that where a statute provides a penalty for an act, a contract for the performance of such act is void, although the statute does not pronounce it void, or prohibit it in express words. But no such question can arise where the statute expressly prohibits the act. In that case the act is necessarily unlawful, and a contract for its performance is necessarily void and incapable of enforcement. Our statute in relation to interest contains both a

prohibition and a penalty. Where the party agreeing to pay illegal interest is a corporation, the penalty can not be invoked in its favor, but the prohibition remains wholly unaffected by the provisions of section 11, which takes from corporations the right to interpose the defense of usury.

*Farwell* v. *Meyer,* 35 Ill. 40, was a bill in chancery to set aside a judgment by confession upon a judgment note in which more than the maximum rate of interest then allowed by law was reserved. As a court of equity will not enforce a penalty, no attempt was made to set up or take advantage of the forfeiture then imposed by the statute for exacting illegal interest. The contract therefore was treated precisely as though no penalty of forfeiture were imposed. The court, however, held that the agreement as to interest, being in contravention of the statutory prohibition, was void and incapable of enforcement, and that only the rate of interest given by law in the absence of a contract was collectible. On this point it was said: "The legal rate of interest in this State is six per cent; and although parties are allowed to stipulate for a rate of interest not exceeding ten per cent, the privilege thus given must be exercised in conformity to the statute. An agreement which can not be enforced as it was made will not be enforced at all. Where the parties stipulate for a higher rate of interest than ten per cent, the agreement can not be enforced as it was made, and we can not substitute for it an agreement which the parties did not make. In such cases the part of the agreement stipulating for a higher rate of interest than six per cent will not be enforced; and the lender or other person contracting for an illegal rate of interest will be allowed (where no forfeitures or penalties are insisted upon) only to recover six per cent, as the measure of the value which our law has established for the use of money, where no agreement has been made for a higher rate, in conformity with its provisions."

In the present case then, the section of the statute imposing a penalty may be left out of view as inapplicable, but still the prohibitory part of the statute remains, making it unlawful for any person or corporation to directly or indirectly accept or receive, for the loan or forbearance of money, any greater rate than six per cent by oral agreement, or greater than eight per cent where the contract is in writing.

It follows, that the rate of interest which may be taken, reserved or charged, whether the borrower or debtor is a natural person or a corporation, is fixed by the laws of this State, and the case does not come within that provision of section 5197 of the Revised Statutes of the United States, which allows national banks to take or charge interest at a rate not exceeding seven per cent, where no rate is fixed by the laws of the State. The rate of interest which may lawfully be contracted for being limited to six per cent where the contract is oral, and to eight per cent where it is in writing, whoever the debtor or borrower may be, national banks are, by section 5197 of the Federal Statutes, limited to the same rates, and by section 5198, the reserving or charging of a greater rate than is thus fixed, subjects the bank reserving or charging the same to a forfeiture of all the interest agreed to be taken, and makes it liable, in case the interest has been paid, to having twice the amount of it recovered back by the party paying the same, in an action in the nature of an action of debt.

In the present case, six per cent interest was reserved in the note. Eight per cent might have been lawfully reserved in such written contract, but it was not. After the reservation, however, of six per cent by the writing, the additional two per cent, or any other rate, could not be lawfully reserved or agreed to be taken or paid by parol. The written agreement having provided for the reservation of all that could be lawfully reserved or agreed to be taken by parol, an oral agreement for any further interest was manifestly in violation of the statute.

There can be no doubt that the agreement by the defendant to secure for the bank the Chicago and Western Indiana Railroad Company as a depositor, or in case of failure to do so, to pay two and one-half per cent commission upon the $150,000 borrowed, was in the nature of an agreement to pay interest upon the loan, in addition to the six per cent per annum reserved in the note. The use of the money was the only possible consideration for such agreement. The bank, through its own officers, loaned its own money directly to the railway company. There is no room for the theory that this extra payment was or was intended to be in any legal sense a commission, although that name was attempted to be applied to it. The transaction was directly between the bank and the railway company, no agent, broker or go-between being employed who might be entitled to a commission for his services. It necessarily follows that the agreement to furnish the railroad company as a depositor or pay the bank two and one-half per cent upon the $150,000, was in consideration of the money loaned, or it had no consideration whatever.

It is admitted that the proposed deposit, if it had been obtained, would have been of value to the bank, as a part of its business. The precise money value to the bank of the deposit is not shown, nor is it material, so long as it is admitted to be of value. A fair inference may be drawn, however, from the fact that the bank exacted the payment of two and one-half per cent upon $150,000 in case of failure to secure the depositor, that in the opinion of the bank, and in the estimation of both parties, that was its reasonable cash value. An oral contract to pay any sum of money, or to furnish anything of value for the use of the money loaned, in addition to the interest reserved in the note, was prohibited by the statute of this State, and that being so, it was prohibited by the Federal statute in relation to national banks.

This suit is brought to recover the extra two and one-half per cent upon the sum of $150,000, or $3,750, reserved by the oral agreement, and adopting this as the measure of the extra interest thus reserved, it is manifest that the entire interest agreed to be paid was much larger than, upon any theory of the law, was permitted by either the State or Federal statute. The loan was only for six months, and two and one-half per cent upon the amount loaned was equivalent to interest at the rate of five per cent for six months. That, added to the interest reserved in the note, made eleven per cent, a rate forbidden by the statute of this State and by the act of Congress as well. We are of the opinion that the legal conclusion from the admitted facts is, that the agreement to pay the money now sought to be recovered is usurious and void. The rulings of the trial court upon the propositions submitted to be held as the law in the decision of the case were all in harmony with this conclusion. We are of the opinion that the judgment of the Circuit Court is correct, and the judgment of the Appellate Court, affirming that judgment, will be affirmed.

*Judgment affirmed.*