SIMON P. DOUTHART, Exr.

*v.*

CHARLES B. CONGDON.

*Opinion filed June 19, 1902.*

1. BILLS AND NOTES—*rule where part of consideration for a note is illegal.* If notes are given in payment of a whole account, no note being for any specific items, and some of the items of the account are illegal, the payee or holder with notice cannot recover thereon, even to the extent of the lawful items.

2. SAME—*when note given to a broker is unenforceable.* If a broker transacts business for a customer without having a license, in violation of a valid ordinance, and charges for his services, which charge forms a part of the consideration for certain notes given to him by the customer in settlement of account, such notes can not be enforced by the broker or by his assignee with notice.

*Douthart v. Congdon,* 98 Ill. App. 487, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES G. NEELY, Judge, presiding.

During the years 1883, 1884, 1885, 1886 and 1887 the appellee and one E. A. Hamill, as co-partners, were engaged in business as brokers and commission merchants on the board of trade in the city of Chicago. Daniel Butters, deceased, appellant's testator, engaged the said firm of brokers to execute orders for the purchase and sale of grain on the board of trade. The parties had an accounting of the transactions between them, and the deceased was held to account to the firm in the sum of $3248.19. This sum included losses on purchases and sales of grain and commissions charged by the brokers for conducting the transactions. The deceased gave notes to each of the partners, individually, for one-half of that sum,—in all six notes,—as follows: One note to each partner for one-fourth of the total, both of which have been paid; two notes to each of the partners, each of such notes being for one-eighth part of the total. Of the four notes last mentioned two fell due September 31, 1891, and two December 31, 1891. In 1892 the deceased paid the sum of $120.69 to each of the partners on the last mentioned notes falling due September, 1891. The said Hamill assigned the two notes held by him to the appellee. The said Butters died August 12, 1896. The appellee filed the notes for allowance against his estate.

During the period of these transactions on the board of trade by the said Hamill & Congdon the following ordinance of the city of Chicago was in force, viz.:

"*Brokers, etc.—License required.*] *Be it ordained by the city council of the city of Chicago:* Sec. 1. It shall not be lawful for any person to exercise within this city the business of a money changer, or banker, broker or commission merchant, including that of merchandise, produce or grain broker, real estate broker and insurance broker, without a license therefor.

"*Merchandise, etc.—Broker defined.*] Sec. 2. A merchandise, produce or grain broker is one who, for commission or other compensation, is engaged in selling or negoti-

ating the sale of goods, wares, merchandise, produce or grain belonging to others."

Section 5 of the same ordinance provided that brokers in grain and commission merchants should pay annually a license fee of $25. Section 6 provided that a penalty of not less than $25 and not more than $100 should be inflicted on one who violated the ordinance by engaging in business as a broker or commission merchant without a license. Another ordinance in force at the time in question fixed the period for which licenses should be granted at one year, and the time of expiration on the last day of April in each year.

In June, 1885, the said firm of Hamill & Congdon transacted the business of commission merchants and brokers in grain on the board of trade in the city of Chicago in violation of the ordinance requiring they should procure a license authorizing them to transact such business. During the same period of time they executed orders for the sale of grain for the deceased and charged him commissions thereon in the sum of $31.25. This sum of $31.25 was included in the total amount in the accounting between them, and composed a part of the aggregate amount for which the deceased, as before said, executed the several notes to the members of the firm. On the hearing in the probate court it was urged the charge of $31.25 was illegal; that it entered into the consideration for each and all of the notes, and that all of said notes were tainted with such illegality, and void. The probate court disallowed the claim *in toto*, and the appellee appealed to the circuit court of Cook county. In that court a jury was waived, and upon the hearing before the court the appellant presented the following propositions, among others, to be held as the law of the case:

"The court holds, as a matter of law, that if a part of the consideration of a contract is illegal the whole contract is void, because public policy will not permit a party to enforce a promise which he has obtained by an

illegal act or an illegal promise, although he may have connected with this act or promise another which is legal.

"The court holds, as a matter of law, that where notes are given in payment of a whole account, no note being given for any specific portion thereof, and some of the items of the account are legal and some illegal, the entire notes can be avoided, and the payee or holder with notice cannot recover thereon, even to the extent of the lawful items.

"This court holds, as a matter of law, that in a suit on a promissory note, although promises and considerations therefor are distinguishable, partial, illegal consideration is a good defense to a recovery upon any part of the instrument against payee or holder with notice."

The court refused the propositions as asked. In other propositions presented to the court it ruled that it was unlawful for a commission merchant or broker to transact business without the license required by the ordinance, and that a broker or commission merchant so transacting business in violation of the ordinance could not, in law, recover commissions for services so unlawfully rendered. The circuit court awarded judgment for the claimant in the amount of the notes and interest thereon, less said sum of $31.25 and interest thereon. The Appellate Court for the First District affirmed the judgment of the circuit court, and the cause is here on a further appeal prosecuted by the executor.

DOUTHART & BRENDECKE, for appellant.

FRANK F. REED, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

In *Braun* v. *City of Chicago,* 110 Ill. 186, and *Banta* v. *City of Chicago,* 172 id. 204, we held the city of Chicago had lawful power to adopt the ordinance in question and that such ordinance was constitutional and effective. The ordinance declared it to be unlawful for the said

firm of Hamill & Congdon to engage in the transaction of the business of commission merchants and brokers on the board of trade without having a license authorizing them so to do. The ordinance also specified and declared a penalty should be inflicted for the violation of its provisions.

In *O'Neill* v. *Sinclair*, 153 Ill. 525, Sinclair, a citizen of the city of Chicago, brought assumpsit against O'Neill to recover commissions for his services in finding a purchaser for certain real estate owned by O'Neill. The ordinance involved in the case at bar was then in force in the city of Chicago, and O'Neill, in defense to the action brought by Sinclair, interposed a special plea setting forth the ordinance, and averring that Sinclair had not, at the time of the transaction then involved, obtained, and did not then have, a license, as required by the said ordinance, authorizing him to act as a real estate broker in the city of Chicago. On the hearing O'Neill contended that Sinclair could not recover commissions for his services in negotiating the sale of real estate without having a license authorizing him to transact the business of a real estate broker, and asked the court to so instruct the jury. The court refused the instruction, and its refusal was assigned as for error. We there said (p. 530): "Was the plaintiff, in negotiating the sale of the defendant's property, exercising the business of a real estate broker, within the meaning of the ordinance? If he was, it would seem very clear that the transaction was illegal and that he is not entitled to recover for his services. The rule is, that where the subject matter of an agreement is prohibited and made unlawful by statute or by a municipal ordinance it cannot be enforced, though the statute or ordinance merely inflicts upon the offender a penalty, and does not, in terms, declare the contract void." We, however, held that the evidence did not tend to show that Sinclair was engaged in the business of selling or negotiating sales of real estate, and that the

mere act of negotiating this one sale for O'Neill did not constitute him a real estate broker, and that the refusal of the court to give the instruction asked was not error of reversible character.

In *Union Nat. Bank* v. *Louisville, New Albany and Chicago Railway Co.* 145 Ill. 208, we said (p. 226): "The general rule therefore is, that any act which is forbidden either by the common or the statutory law, whether it is *malum in se* or merely *malum prohibitum*, whether indictable or only subject to a penalty or forfeiture, or however otherwise prohibited by statute or the common law, can not be the foundation of a valid contract. * * * A statute may render an agreement illegal in one of two ways, viz., by express prohibition or by the imposition of a penalty. (Anson on Contracts, 172.) Where the statute does no more than impose a penalty upon the carrying out of the objects of the contract, a question has sometimes arisen whether or not the imposition of the penalty of itself amounts to a prohibition, although the weight of authority would seem to be that where a statute provides a penalty for an act, a contract for the performance of such act is void, although the statute does not pronounce it void or prohibit it in express words. But no such question can arise where the statute expressly prohibits the act. In that case the act is necessarily unlawful, and a contract for its performance is necessarily void and incapable of enforcement."

In *Miller* v. *Ammon*, 145 U. S. 421, it was said: "The general rule is, that a contract made in violation of a statute is void, and that when plaintiff cannot establish his cause of action without relying upon an illegal contract he cannot recover. * * * There can be no civil right where there can be no legal remedy, and there can be no legal remedy for that which is itself illegal. * * * It is true that a statute containing a prohibition and a penalty makes the act which it punishes unlawful, and the same may be implied from a penalty without a pro-

hibition. * * * Where the statute is silent and contains nothing from which the contrary may be inferred a contract in contravention of it is void."

The author of the article on "Broker," in the second edition of the American and English Encyclopedia of Law, (vol. 4, p. 982,) states his deductions from the authorities, as follows: "Where, by the terms of a statute or city ordinance, it is made illegal for a broker to exercise his business without a license, a broker cannot recover commissions for services rendered without such license."

We are cited by counsel to *Toledo Tie and Lumber Co.* v. *Thomas*, 33 W. Va. 566, where it was held that unless ordinances and statutes expressly declare that a failure to obtain a license to carry on any business shall render such business, dealing and transaction void and unenforcible, the unlicensed person may recover for services, etc. In that opinion it is said: "We are aware that the courts of Indiana, Illinois, Wisconsin, and perhaps other States, hold a different doctrine." We understand the law of this State as does the Supreme Court of West Virginia.

The ordinance in the case at bar denounced as unlawful the prosecution of the business of a broker in grain without a license, and also provided for the infliction of a fine as a punishment or penalty for each transaction of a broker in violation of the ordinance. The particular transaction for which the sum of $31.25 was charged and included in these notes was an unlawful act, and subjected the said brokers to punishment by way of a fine. It was illegal, and entered into and formed a part of the consideration for the promise contained in each of the notes. The rule has long been established that if any part of an entire consideration for a promise or any part of an entire promise be illegal the whole contract is void. (*Henderson* v. *Palmer*, 71 Ill. 579; *Tenney* v. *Foote*, 95 id. 99; Metcalf on Contracts, 246; Addison on Contracts, 905; Chitty on Contracts, 730; 1 Parsons on Contracts, 456;

1 Parsons on Notes and Bills, 217; Story on Promissory Notes, 190; Byles on Bills, 211; Chitty on Bills, 94; 4 Am. & Eng. Ency. of Law,—2d ed.—192; 17 Am. & Eng. Ency. of Law,—2d ed.—308; *Didoe* v. *Webb*, 20 Ohio St. 431.) The view expressed by Mr. Parsons in his work on Notes and Bills, *supra*, is, that if the consideration is in part illegal the whole promise is void; that an action might be brought on the original transaction on so much as was legal but could not be maintained upon a note given for the entire consideration. This question has frequently arisen in actions on promissory notes in which the consideration was in part for groceries or other articles of merchandise and in part for intoxicating liquors sold without license or otherwise in violation of law. In such cases it has been uniformly held that such notes are wholly void and that no recovery could be had on them, even for the groceries or merchandise. (17 Am. & Eng. Ency. of Law,—2d ed.—308.) A partial want or a partial failure of consideration avoids a note only *pro tanto*, but illegality in a part of the consideration upon which the promise contained in the note is founded avoids the entire promise and renders the entire note uncollectible. "The whole consideration is the basis of the whole promise. The parts of the consideration are inseparable. Such is the doctrine of the text books." This principle of law was correctly stated in the propositions of law presented by the executor, and the refusal of the circuit court to hold them to be correct manifests that the court did not entertain and apply correct principles of law in the determination of the controversy. This error resulted in the judgment appealed from.

It follows that such judgment, and the judgment of the Appellate Court affirming it, must be and each is reversed, and the cause will be remanded to the circuit court for further proceedings in conformity with this opinion.     *Reversed and remanded.*