**John J. Keenan, trading as John J. Keenan & Company, Appellee, v. A. Tuma, trading as Tuma Brothers, Appellant.**

### Gen. No. 30,497.

1. BUILDING AND CONSTRUCTION CONTRACTS—*when contract one involving practice of architecture.* A contract whereby "you employ us architecturally to prepare the necessary plans, drawings and specifications * * * for your new cafeteria," and contain-

ing also the undertaking of the plaintiff to write necessary contracts between defendant and parties to whom the work was let and to supervise the construction and details of the work, was a contract involving the practice of architecture within the meaning of Cahill's St. ch. 10a, ¶ 2.

2. BUILDING AND CONSTRUCTION CONTRACTS—*when work contracted to be done involves practice of architecture.* Where a contract whereby plaintiff was employed "architecturally" involved the preparation of plans and specifications, the letting of contracts and the supervision of construction work for the removal of a store front and the putting in of another of a different kind, the removal of a rear stairway and the substitution of a stairway in the basement, the alteration of rear wall, the construction of a partition and the wainscoting of a room, the work contracted to be done involved the practice of architecture within the meaning of Cahill's St. ch. 10a, ¶ 2.

3. BUILDING AND CONSTRUCTION CONTRACTS—*when work undertaken and performed in violation of statute governing practice of architecture.* Where one who was employed "architecturally" to make alterations upon a building, the work to include the making of plans, drawings and specifications, the letting of contracts and the supervision of construction, personally attended to all of such undertaking except the preparation of the plans, drawings and specifications, which were done under his supervision by a licensed architect in his employ, such person undertook and engaged in the practice of architecture in violation of Cahill's St. ch. 10a, ¶ 1, not being registered as an architect pursuant to such chapter.

4. BUILDING AND CONSTRUCTION CONTRACTS—*invalidity of contract for employment of unregistered architect.* A contract whereby one undertakes to perform services involving the practice of architecture, which is illegal because the promisor is not registered as an architect pursuant to Cahill's St. ch. 10a, ¶ 1 *et seq.*, forms no valid consideration for the agreement of the recipient of such services to pay compensation therefor, and such contract is a nullity.

5. SAVING QUESTIONS FOR REVIEW—*submission of propositions of law as prerequisite to decision on interpretation and application of statute on review of cause tried without jury.* The fact that no propositions of law were submitted to the trial judge, at the trial of an action to the court without a jury, does not preclude the reviewing court from entertaining and deciding a question involved on the appeal touching the interpretation and application of a statute.

Appeal by defendant from the Municipal Court of Chicago; the Hon. SAMUEL H. TRUDE, Judge, presiding. Heard in the third divi-

sion of this court for the first district at the October term, 1925.
Reversed. Opinion filed May 5, 1926.

ROBERT L. HUTTNER, for appellant.

JAMES MAHER, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

On September 29, 1924, the plaintiff, Keenan (who did business under the title of John J. Keenan & Co.), began suit in a fourth-class case in the municipal court of Chicago against the defendant, Tuma (who did business under the title of Tuma Brothers), for $650 for a balance alleged to be due for architect's services rendered under a written contract, and upon a trial, without a jury, on February 20, 1925, recovered a judgment in the sum of $500. This appeal is prosecuted by the defendant.

The statement of claim set forth what purported to be a letter in confirmation of an oral agreement made by the parties, and a written acceptance by the defendant. The essential parts of that letter, which was written and signed by the plaintiff and addressed to the defendant, are as follows:

"This is in confirmation of our verbal agreement wherein you employ us architecturally to prepare the necessary plans, drawings and specifications    *    *    * for your new cafeteria.    *    *    *

"The plans to consist principally of Fixture Equipment, New Store Front, installation of Mezzanine Floor, Kitchen Equipment, Electric Wiring and Lighting, and also Ventilation, Plumbing, Decoration and all other improvements.

"The plans are to be submitted to you for your approval, and we are to furnish blue prints and specifications to the different parties figuring on the various lines of work, take figures and submit them to you for approval.

"We are to write proper contracts between you and the parties given the work; also to superintend the construction and details of the work, both at the factory and at the cafeteria when the work is being installed.

"For the architectural service you are to pay us a fee equivalent to 5% on the cost of the work and a like amount for supervision during construction and installation and the securing of the necessary permits from the City."

That letter was signed by the plaintiff, and was indorsed, below, "Accepted: Tuma Brothers, A. Tuma." The issue upon which the cause was tried was made up by the statement of claim and an additional affidavit of merits. By the latter, the defendant alleged that when the contract for services was made, and thereafter, the plaintiff was not a licensed architect and, so, was not entitled to recover.

The evidence of the plaintiff is substantially as follows: He has been in the business of engineer and architect, specializing in material, store fixtures and equipment, for 30 years, and employs from 30 to 40 men, but is not and at no time has been a licensed architect. Although he does business in the name of John J. Keenan & Company, he, alone, is the plaintiff, with offices in the Conway Building. He knew the defendant for about one year. The defendant employed him, "architecturally" to make alterations in his, the defendant's store at Halsted and Madison Streets, and equip it as a restaurant and cafeteria. Carrying out the contract, set forth in the statement of claim, he, the plaintiff, under instructions from the defendant, prepared plans and specifications of the equipment, proceeded to take figures, and at the suggestion of the defendant, made a contract with the Chicago Equipment Company. In drawing up that contract, he, the plaintiff, prepared the specifications as architect, before it, the contract, was signed by the

defendant and the Chicago Equipment Company. That contract between the defendant and the Chicago Equipment Company provided that the company would remove the store front and put in a new one according to the drawings, remove rear stairs and substitute stairs to basement, and alter rear wall in accordance with revised plan, put up a plastered partition, put in wainscoting in dining room, provide certain tables, chairs, fixtures and equipment, all in accordance with plans and specifications prepared by him, the plaintiff, referred to as superintendent, and to the satisfaction of both parties. The contract provided for certain payments to be made by the defendant on certificates as the work progressed, and as certified to by the plaintiff as superintendent.

He, the witness, prepared plans and specifications, detailed drawings of the changes in the building to be made, and of the equipment of fixtures that were to be put in. Four times a week, for about six weeks, he visited the defendant's place of business, and he inspected the work as it was being done by the Chicago Equipment Company at the defendant's place of business, and when it was finished, he rendered the defendant a bill for 10 per cent on the cost, as his commission. The total commission amounted to $750, or $800. Before the job started, he received an advance payment of $250, leaving $500, which was finally due, and which the defendant has refused to pay.

On cross-examination, he testified that he never was a licensed architect, but employs licensed architects; that the plans for the work on the defendant's restaurant were drawn by Sanders, a licensed architect in his, the defendant's, employment.

One Van Bogert, general manager of the Chicago Equipment Company, testified that the plaintiff drew up the plans and specifications, and inspected the work as it progressed. One Hewett, an employee of the same company, testified that he saw the plaintiff on

the job nearly every day, and that he looked over the plans to see if matters were going along all right, and checked the work according to the plans and specifications.

Certain plans, drawings and specifications, which it was stipulated were made by the plaintiff pursuant to the contract between the parties, were introduced in evidence by the plaintiff, and it was stipulated that, on the lower right hand corner of each of them, there was indorsed the following: "Tuma Bros. Cafeteria, 808 W. Madison St., Chicago, Ill. John J. Keenan & Co., Architects & Engineers, 111 Washington St., Chicago, Ill. L. M. Sanders—Architect."

The defendant testified that the plaintiff called on him and introduced himself as a licensed architect, and asked for the job on his store; that the plaintiff said he would furnish all the architectural drawings, and supervise the plans; that the plaintiff sent him a letter (the one set up in the statement of claim), which he, the defendant, signed and accepted.

The licensing of architects and the regulation of the practice of architecture as a profession is provided for by chapter 10a, Cahill's St. 1925, paragraph 1, as follows:

"It shall be unlawful for any person to practice architecture or advertise or put out any sign or card or other device which might indicate to the public that he or she is entitled to practice as an architect, without a certificate of registration as a registered architect, duly issued by the Department of Registration and Education under this Act."

Section 16 [Cahill's St. ch. 10a, ¶ 16] provides that practice in violation of section 1 is a misdemeanor punishable by a fine of not less than $25, nor more than $200.

Section 2 [Cahill's St. ch. 10a, ¶ 2] defines the practice of architecture as follows:

"Any one, or any combincation [combination] of

the following practices by a person shall constitute the practice of architecture, namely: The planning or supervision of the erection, enlargement or alteration of any building or buildings or of any parts thereof, to be constructed for others. A building is any structure consisting of foundations, floors, walls, columns, girders, beams and roof, or a combination of any number of these parts, with or without other parts.''

(1) Did the services contracted for involve the practice of architecture? We think they did. The written proposition of March 6, 1924, which was accepted by the defendant, says, ''you employ us architecturally to prepare the necessary plans  *  *  *  for your new cafeteria  *  *  *. The plans to consist of Mezzanine Floor, Kitchen Equipment, Electric Wiring and Lighting, and also Ventilation, Plumbing, Decoration and all other improvements.'' It, also, provides that, in addition to the plans being submitted for approval, blue prints and specifications are to be furnished ''to the different parties figuring on the various lines of work, take figures and submit them to you for approval.'' It, also, provides that the plaintiff shall draw up proper contracts between the defendant and the parties given the work, and that the plaintiff shall superintend the construction of the work, both at the factory and at the cafeteria. It, also, provides: ''For the architectural service you (the defendant) are to pay us a fee equivalent to 5% on the cost and a like amount for supervision  *  *  *  .''

It will be seen, therefore, that practically all the service the plaintiff contracted to render pertained to the practice of architecture.

As to the actual work the defendant undertook to have done, it involved, briefly stated, the removal of a store front and putting in another of a different kind; the removal of a rear stairway, and the substitution of a stairway in the basement; the alteration of a rear wall, in accordance with a revised plan; the construc-

tion of a 3-inch mackalite partition plastered on two sides, forming kitchen division and toilet room, including all necessary details, and putting wainscoting in the dining room. That shows, we think, that what was to be done was a subject concerning which architect's services as defined by section 2, *supra,* were to be practiced and rendered.

(2) The question then remains whether the plaintiff, who was not a licensed architect, may recover compensation for architect's services, where, although he employed a licensed architect to draw the plans, nevertheless he, himself, inspected the work from time to time as it progressed, practically every day, checking the work according to the plans and specifications, and supervised, "the erection, enlargement or alteration" of all that was contracted for. Section 2, *supra,* provides expressly that, "The planning or supervision" of a building or alteration constitutes the practice of architecture. It follows, therefore, that although the plans were made by his employee, Sanders, who was a licensed architect, he, the plaintiff, when he supervised the work in the way the evidence shows he did, undertook the practice of architecture in direct violation of the statute.

Although section 3 [Cahill's St. ch. 10a, ¶ 3] of the act, as interpreted by the court in *People ex rel. State Board Examiners of Architects v. Rodgers Co.,* 277 Ill. 151, provides that a corporation may contract for doing architectural work, if the work is to be done by a regular licensed architect, and there is no express provision in the act that a private person may do likewise, we think it must be assumed that the legislature did not intend to give a corporation greater contractual rights than an individual, and so deprive the latter of the right of employing licensed architects. As the court said in the *Rodgers Co.* case, *supra:* "Making contracts for services to be performed by an architect and collecting the compensation therefor is not

practicing architecture within the meaning of the statute." Citing *State Electro-Medical Institute v. Platner*, 74 Neb. 23; *Crall v. Commonwealth*, 103 Va. 855; and *Davidson v. State*, 77 Md. 388. In the last case it was held that one who had not been examined and registered as a plumber might engage in the business of plumbing, and contract for furnishing necessary materials and doing the appropriate work, provided he did not personally perform any of the manual work, but employed therefor duly examined and registered plumbers. The court further said in the *Rodgers Co.* case: "Any natural person, licensed or unlicensed, may make a contract to furnish architectural work to be performed by a licensed architect."

As here, however, the evidence shows that a substantial part of the architectural services contracted for were actually rendered and practiced not by a licensed architect in the employment of the plaintiff, but by the plaintiff himself and so constituted a violation of the statute, it follows that they could not become a valid consideration for the promise of the defendant, and so, in the eyes of the law the alleged contract of employment became a nullity. A promise to do or the doing of illegal things is not a good consideration for a promise to pay. In such a case the law affords no affirmative remedy, but leaves the parties where, by their own acts, they have placed themselves. As said by Mr. Justice Swayne in *Coppell v. Hall*, 7 Wall. (U. S.) 542, "the law will not lend its support to a claim founded upon its violation." *Estate of Ramsay v. Whitback*, 183 Ill. 550, *Brieske v. North Chicago St. Ry. Co.*, 82 Ill. App. 256. Broom's Legal Maxims, p. 738, 8th ed.

As to the contention that the plaintiff made representations that were not justified and had no right to hold himself out as an architect, that need not here be considered, as the only defense set up in the affi-

davit of merits is that the plaintiff was not a licensed architect.

It is contended that, as no propositions of law were submitted to the trial judge, the question concerning the interpretation and application of the statute may not be considered here. That is untenable. This court is authorized to pass both upon the facts and the law even though no propositions of law were held or refused by the trial court. *Pittsburgh, C., C. & St. L. Ry. v. Chicago City Ry. Co.,* 300 Ill. 162.

For the foregoing reasons, the judgment will be reversed.

*Reversed.*

THOMSON, P. J., and O'CONNOR, J., concur.