NUTRI-PRO, INC., Plaintiff-Appellant, v. JERRY PHELPS, Defendant-Appellee.

Fourth District    No. 4—88—0038

Opinion filed July 14, 1988.

506

William H. Knuppel, of Boggs & Knuppel, of Havana, for appellant.

Knuppel, Grosboll, Becker & Tice, of Petersburg (Eldon H. Becker, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

This case arose from an action for the enforcement of a promissory note. The trial court decided the defense of illegality was available to defendant and refused to enforce the plaintiff's claim or the defendant's counterclaim. Plaintiff filed timely notice of appeal and presents two issues. They are (1) was the balance due and owing by Phelps to Nutri-Pro correctly computed by the trial court, and (2) was the agreement between Nutri-Pro and Phelps illegal and unenforceable because Nutri-Pro failed to register its feed with the Illinois Department of Agriculture. We disagree that the defense of illegality was available and reverse as to plaintiff's claim but affirm as to defendant's counterclaim and the trial court's calculation of the award.

On July 7, 1982, the plaintiff, Nutri-Pro, Inc., entered into a written agreement with the defendant, Jerry Phelps, and Gerald Gordon doing business as Nutri-Pro of Illinois. The plaintiff Nutri-Pro, as the supplier, provided defendant Phelps and Gordon with feed which they bought for resale to their customers. On October 28, 1982, defendant Phelps and Gordon signed a promissory note of $52,000 payable to Nutri-Pro, Inc. The parties disagree as to whether the interest rate was written on the note at the time of signing. After several months Phelps and Gordon ceased to do business together and defendant Phelps continued the business as Nutri-Pro of Illinois.

Defendant claims the promissory note was not intended to evidence debt but was collateral for products provided by Nutri-Pro. Defendant testified that part of the inducement offered by plaintiff to carry its feed products was that plaintiff would absorb the shipping and interest costs involved in their transactions. Plaintiff's former president, Daniel Brandt, testified the interest was marked on the note at the time of signing by defendant and defendant was responsible for freight and interest. Due to poor bookkeeping on the part of both parties it is unclear as to what defendant was paying for in the way of interest and freight, though he admitted paying an interest invoice as an accommodation to the defendant.

On December 26, 1985, plaintiff filed its complaint to collect on the promissory note. On February 14, 1986, defendant filed a countersuit alleging he had overpaid his account with Nutri-Pro and claiming

the overpayment. On the first day of trial, September 22, 1987, the defendant raised the defense of illegality of the contract.

After hearing testimony and closing arguments the trial court issued its final order on December 18, 1987. The court found plaintiff had failed to show that defendant had been obligated to pay for freight and interest. The court then totalled the amount of merchandise received and subtracted payments made by defendant and found that $2,149.35 was still due on defendant's account. However, it accepted defendant's illegality defense and therefore declined to enforce the claims of either party. We reverse as to plaintiff's claim and affirm as to defendant's counterclaim and calculation of the award to the plaintiff of $2,149.35.

The parties by stipulation agree that the plaintiff failed to register the product as required by statute. The trial court in this case found the contract between the plaintiff-seller and defendant-buyer was unenforceable because of the failure of the plaintiff to register under the provisions of the Illinois Commercial Feed Act of 1961. (Ill. Rev. Stat. 1985, ch. 56½, par. 66.1 *et seq.*) The statute requires commercial feed offered for sale in Illinois be registered with the Department of Agriculture. Section 12 of the statute provides for penalties and injunctions against anyone violating this requirement or interfering with the enforcement of the statute. Ill. Rev. Stat. 1985, ch. 56½, par. 66.12.

It is an old and established doctrine in Illinois that contracts for an illegal purpose will not be enforced by the courts and the courts will leave the parties as it found them. The Illinois Supreme Court has held such contracts were unenforceable even when the underlying statute merely imposed a penalty for the illegal act and did not expressly declare any related contracts void. (*Douthart v. Congdon* (1902), 197 Ill. 349, 64 N.E. 348; *Union National Bank v. Louisville, New Albany & Chicago Ry. Co.* (1893), 145 Ill. 208, 34 N.E. 135.) More recently, it has been held no recovery can be had by either party to a contract where the performance would involve the violation of an existing law. (*Broverman v. City of Taylorville* (1978), 64 Ill. App. 3d 522, 381 N.E.2d 373.) The law of Illinois provides a defense to the enforcement of a contract if that contract is illegal either as a matter of Illinois or Federal law. The relevant statute need not declare the contract void or unenforceable to render it available to the defendant as a groun᠎ for the defense of illegality. *American Buyers Club of Mt. Vernon, Illinois, Inc. v. Grayling* (1977), 53 Ill. App. 3d 611, 368 N.E.2d 1057.

As pointed out by plaintiff, *Grody v. Scalone* (1950), 408 Ill. 61,

96 N.E.2d 97, holds that in a case where the contract is illegal because of a statute and the statute contains specific penalties, the court will assume these listed penalties are exclusive. Since the supreme court held that refusal to enforce a contract can be a penalty, it found it inappropriate for the court to impose additional sanctions where the legislature had provided specific penalties. The court also based its decision on the equitable argument that one party should not be unjustly enriched where the other party has breached a statute unrelated to the activity which was the subject of the contract. In *Grody* the plaintiff had failed to register under an assumed name statute and the defendant had raised the defense of illegality to the plaintiff's contract claim. While the defendant here would like to distinguish *Grody* on its facts and *dicta,* the holding in the opinion is very broad and cannot be easily distinguished. Regrettably the supreme court did not cite or discuss its earlier decisions in the *Grody* case. The two lines of cases converge briefly in *White v. Chicago Title & Trust Co.* (1981), 99 Ill. App. 3d 323, 425 N.E.2d 1017, but the statute underlying that decision specifically provided brokers who violated its provisions could not bring suit to recover their fees and there was no need to resolve any conflict.

In the case before this court, the underlying statute does contain specific penalties, but section 12(d) of the statute provides:

> "The Director may file a complaint and apply for and the court may grant a temporary restraining order or a preliminary or permanent injunction restraining any person from violating or continuing to violate any of the provisions of this Act or any rules or regulations promulgated under the Act *notwithstanding the existence of other judicial remedies,* the injunctive relief to be granted without bond." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 56½, par. 66.12(d).)

It would appear, therefore, the legislature did not intend these remedies to be exclusive but rather in addition to any available remedies in the courts.

Plaintiff has argued *Douthart* is outdated and states a rule of law which is inappropriate to the modern commercial scene. Plaintiff has cited *Grody* and cases following its reasoning as a kind of tacit rejection by the supreme court of its earlier decision in *Douthart.* However, the cases can be harmonized. By its own language *Douthart* does not apply to every situation where a plaintiff violates a statute:

> " 'The rule is, that where *the subject matter of an agreement is prohibited* and made unlawful by statute or by a municipal ordinance it cannot be enforced, though the statute or ordinance

merely inflicts upon the offender a penalty, and does not, in terms, declare the contract void.' " (Emphasis added.) *Douthart*, 197 Ill. at 353, 64 N.E. at 349.

■■ It is clear from this language and *Grody* the supreme court does not intend the defense of illegality to be available to a defendant whenever a disputed contract would in some way violate a statute however remotely related to the contract. In a legal system grown increasingly comprehensive and complex, the results would be uncertainty and injustice. The supreme court has therefor limited the application of this rule to cases where the subject matter of the contract is in direct contravention of the statutory purpose.

■■ We cannot find this is such a case. The Commercial Feed Act of 1961 is a statute whose purpose is to compel the registration of information concerning the contents of animal feeds sold in this State. While the statute does contain penalties which include fines and injunctions, the Director of the Department of Agriculture has wide discretion in enforcing the Act and need not prosecute minor infractions if he feels that is in the public interest. The subject matter here is clearly the registration of information, not the regulation of feed sales. The statute does forbid the sale of misbranded feeds, and the legislature could just as easily forbid the sale of unregistered feeds or could have retained the licensing scheme which existed under the predecessor to the current statute. That it did not indicates the legislature intended the penalties provided only as sanctions to compel compliance with the registration requirements, not to interfere in commercial transactions between private parties. To employ the reasoning of *Douthart*, the subject matter of the statute here is the registration not the sale of feed. We believe the trial court was incorrect in refusing to enforce the contract based on the defense of illegality. Additionally, it is noted that defendant is not shown to be a contract feeder as defined in section 3(m) as it is used in the definition of distribute, section 3(b). Ill. Rev. Stat. 1985, ch. 56½, pars. 66.3(m), (b).

Our reversal in part of the trial court's decision requires us to deal with the question of an award. The trial court, though not required by its decision, showed foresight in calculating an appropriate award, foreseeing the possibility that its decision on enforceability might be reversed on appeal.

Plaintiff has correctly pointed out the trial court was mistaken in one respect. In examining the possible motives for defendant's signing the $52,000 promissory note, the court commented in its decision that it could not be to pay for the amount due on the defendant's open account since the amount was only $34,656.36. However, the court over-

looked two invoices in the record which totalled $17,529.80, which, when coupled with the freight and interest disallowed by the court and credits, eliminates the discrepancy with the figure of $52,264.50 shown on Nutri-Pro's books. While this problem goes to the question of the motives of the parties in signing the note, it did not affect the court's calculation since the trial court's final order indicates that it relied on Nutri-Pro's account analysis which included entries representing the amounts of the two invoices.

■ The trial court found plaintiff had failed to carry its burden of proof in regard to the issue of whether the defendant was obligated to pay interest and freight charges. It came to this conclusion after reviewing the conflicting evidence and testimony of the parties. It is well settled that a reviewing court will defer to the trial court's findings unless these findings are against the manifest weight of the evidence. *In re Petition of Craig* (1987), 164 Ill. App. 3d 1090, 518 N.E.2d 728.

■ Plaintiff argues the trial court's decision is against the manifest weight of the evidence in that the invoices indicate a course of dealing between plaintiff and defendant where defendant clearly was paying freight and interest. After review of the invoices contained in the record, we do not find they support the plaintiff's contention. Freight charges cease to appear on the invoices after early 1983, which tends to support the defendant's explanation of the transactions, and interest appears only twice in mid-1983 despite the entry of interest charges on the plaintiff's books on a monthly basis.

For the reasons stated above, we find the trial court's refusal to award interest and freight costs was not against the manifest weight of the evidence. The trial court calculated the total amount of goods purchased by the defendant and subtracted the amount defendant paid on account. The trial court found $2,149.95 remained due to the plaintiff on defendant's account and we agree this is the appropriate award in this case. We, therefore, reverse the judgment entered for the defendant on the plaintiff's complaint, affirm the court's judgment in favor of plaintiff on the defendant's counterclaim, and enter judgment in favor of the plaintiff and against the defendant in the amount of $2,149.95.

Affirmed in part; reversed in part; and judgment entered for plaintiff in the amount of $2,149.95.

GREEN, P.J., and SPITZ, J., concur.