THE FEDERAL LAND BANK OF ST. LOUIS, Plaintiff-Appellee, v.
DONALD E. WALKER *et al.*, Defendants-Appellants.

Fifth District   No. 5—90—0514

Opinion filed May 1, 1991.

Jerold W. Barringer, P.C., of Carlinville (Jerold W. Barringer, of counsel), for appellants.

Tietz & Richardson, of Decatur (Jeffrey D. Richardson, of counsel), for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

Defendants borrowed money from the Federal Land Bank of St. Louis and defaulted on the loan. Plaintiff, the Federal Land Bank of St. Louis, sued to foreclose on the mortgage securing the debt and petitioned to be placed in possession. The circuit court granted the petition. Defendants appealed. We affirm.

■■ The sole issue on appeal is whether the circuit court erred in placing plaintiff in possession of defendants' land. To be placed in possession, the petitioner must show a reasonable likelihood of success on the merits, which ordinarily is established by showing a default. *Brown County State Bank v. Kendrick* (1986), 140 Ill. App. 3d 538, 488 N.E.2d 1079.

Defendants claim that the circuit court erred because the loan contract was unenforceable, and therefore, there can be no default. According to defendants: (1) Plaintiff did not follow the loan procedures set forth in the Farm Credit Act (12 U.S.C. §2011 *et seq.* (Supp.

1971)) when it loaned defendants money; (2) failure to follow these procedures amounted to a violation of law; (3) contracts entered in violation of statutory or regulatory law are unenforceable; and (4) since the contract is unenforceable, there can be no default or possibility of success on the merits.

■■ Section 2034 of the Farm Credit Act requires persons interested in borrowing money from a Federal bank to first purchase stock in the Farm Credit Association and states further that "stock shall be paid for in cash by the time the loan is closed." 12 U.S.C. §2034 (Supp. 1971).

Defendants did not pay for the stock in cash; instead, the bank loaned them the money to buy the stock as well as to buy the land.

Defendants make three arguments.

Firstly, defendants argue that the Farm Credit Act prohibits the bank from lending them money to buy the stock in the Farm Credit Association that in turn allows them to borrow money to buy land, and in consequence, the loan violated the law and is unenforceable.

Secondly, defendants argue that the second part of the sentence, "by the time the loan is closed," means that the money for the stock must have been delivered before closing. Since they never paid for the stock from their own funds, they did not deliver cash before the loan was closed, and therefore, the Federal Land Bank again violated the law, making the contract unenforceable.

Thirdly, defendants argue that section 2033(8) of the Farm Credit Act states that stock shall be "issued" and that the term "issued" means that the stock must actually be delivered. Since plaintiff merely credited defendants with stock instead of actually delivering to them the stock certificates, defendants argue that the bank violated the statute thereby rendering the contract unenforceable.

Defendants' tridentate argument appears to boil down to this: the bank loaned money that was necessary to buy the stock which allowed defendants to borrow more money from the bank to buy land, and although neither loan was repaid, defendants can now keep the land, and the bank cannot collect by legal process, because the initial loan violated the law.

■■ Merely because a contract may violate some law or some regulation does not necessarily make that contract unenforceable. Contracts are unenforceable when the subject matter of the contract or the purpose of the contract violates the law. (*Nutri-Pro, Inc. v. Phelps* (1988), 172 Ill. App. 3d 505, 526 N. E.2d 891; *Schniederjon v. Krupa* (1985), 130 Ill. App. 3d 656, 474 N.E.2d 805; *Klubeck v. Division Medical X-Ray, Inc.* (1982), 108 Ill. App. 3d 630, 439 N.E.2d

506; see also *Comdisco, Inc. v. United States* (7th Cir. 1985), 756 F.2d 569.) The question in this type of case is whether the subject matter of the contract violates a law, not whether there is a deviation from some legal technical requirement that does not concern the subject matter of the contract. Failure to strictly follow guidelines in lending money, therefore, does not necessarily cause the contract to violate the law and become unenforceable.

■ The power to declare a contract illegal and unenforceable comes from two sources: (1) the common law, declared by courts; and (2) the legislative branch of government. An example of a contract that has been judicially declared illegal and unenforceable is a contract that is in restraint of trade. (*The Dyer's Case* (1414), 2 Hen. V PI. 26; see also *House of Vision Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21.) Examples of contracts that have been legislatively declared illegal and unenforceable are gambling contracts and contracts for prostitution. Ill. Rev. Stat. 1989, ch. 38, pars. 28—7, 11—19.

Contracts declared illegal and unenforceable thus run the gamut from those that restrain economic freedom to those that are nefarious and immoral. From this, it is deduced that a declaration of illegality and unenforceability is principled upon a finding that the contract has a deleterious effect upon society as a whole.

■ We refuse to exercise our common law power to declare this contract illegal and unenforceable, for it appears to us that neither the buying of land nor the lending of money to buy land nor the lending of money to buy stock is nefarious, immoral, or deleterious to society as a whole, nor has it been shown in this case that the contract restrains an economic freedom or has a deleterious effect upon society as a whole.

■ The one question remaining is the major question, and it is one of statutory construction. Did Congress, by phrasing the Farm Credit Act as it did, intend to outlaw notes and mortgages when the lender also advances funds to buy stock as was done in this case? Both the statute and the legislative history are silent on the issue.

In oral argument, defendants contended that Congress implicitly intended to discourage lending money to marginal buyers by requiring the buyer first to have funds sufficient to buy stock in the Farm Credit Association. As salutary as that might be, we can find no such intent because: (1) Congress did not express it; (2) an inference that Congress intended to preserve family-operated farms by making it easy to extend credit to buyers of limited funds is just as likely as the one advanced by defendants, and this latter inference would legitimize a bank's practice of loaning money to buy the predicate stock; and (3)

defendants' interpretation would impute to Congress an intention to outlaw a contract that is neither nefarious nor immoral.

In the face of congressional silence, and taking into account all other reliable techniques of statutory construction, we impute to Congress no implicit intent to declare outlawed the kind of contract presented in this case.

Even if we were to agree with defendants that Congress intended, albeit implicitly, to require borrowers to purchase stock from their own funds, we cannot agree that plaintiff's failure to secure defendants' own funds for the stock renders the contract illegal and unenforceable. We hold this to be true for the same reason that an otherwise unenforceable contract under the Statute of Frauds is rendered enforceable by partial performance (*Anastaplo v. Radford* (1958), 14 Ill. 2d 526, 153 N.E.2d 37), namely, that defendants received the benefit of their bargain; for it is said that "unless a bargain necessarily contemplates an illegal act, it is not unenforceable, and if it is later performed in a way that involves some slight violation of law, not seriously injurious to the public order, the person performing may recover on his bargain." (*Meissner v. Caravello* (1955), 4 Ill. App. 2d 428, 431, 124 N.E.2d 615, 616, citing VI S. Williston, Contracts, §1767, at 5018-19 (rev. ed. 1938).) This language is eminently applicable to this case.

■ To be placed in possession, the petitioner must show a reasonable likelihood of success on the merits, which ordinarily is established by showing a default. (*Brown County*, 140 Ill. App. 3d 538, 488 N.E.2d 1079.) Plaintiff showed the existence of a default, and the circuit court granted plaintiff's petition. Having found that the contract was enforceable, we find no error in placing plaintiff in possession. The circuit court is affirmed.

Affirmed.

HARRISON and WELCH, JJ., concur.