KEDZIE AND 103rd CURRENCY EXCHANGE, INC., Plaintiff-Appellant, v. BEULAH M. HODGE, Defendant-Appellee (Fred Fentress, Defendant). First District (4th Division) No. 1—91—0851

Opinion filed May 14, 1992.

JIGANTI, P.J., dissenting.

Williams, Rutstein, Goldfarb, Sibrava & Midura, Ltd., of Chicago, and Gerald R. Slutsky, of Northbrook (Scott A. Slutsky and John C. Sibrava, of counsel), for appellant.

Mayer, Brown & Platt, of Chicago (Franklin P. Auwarter and Kathleen H. Gorr, of counsel), for appellee.

. JUSTICE LINN delivered the opinion of the court:

Plaintiff Kedzie & 103rd Street Currency Exchange, Inc., cashed a check for defendant Fred Fentress (who is not a party to this appeal). Defendant Beula M. Hodge, drawer of the check, notified her bank to stop payment on the check when Fentress, engaged to perform plumbing services, did not appear at her home to begin work. As a holder in due course, plaintiff sought damages from Hodge. The trial court, however, granted Hodge's motion to dismiss, based on the defense of illegality, pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) and section 3—305 of Illinois' codification of the Uniform Commercial Code (Ill. Rev. Stat. 1989, ch. 26, par. 3—305).

Plaintiff states the issue as whether a holder in due course of a check takes the check free from the defense of illegality, where the drawer of the check issued it as a partial advance payment for plumbing services to be rendered, but the payee was not licensed as a plumber.

We affirm.

BACKGROUND

Plaintiff, an Illinois corporation doing business as a currency exchange, filed suit after the $500 check it had cashed for Fentress was returned marked "payment stopped." Hodge had made out the check to "Fred Fentress—A-OK Plumbing" as partial payment, in advance, for plumbing services at her residence. When he failed to appear on the date work was to begin, Hodge directed her bank to stop payment on the check. Fentress, in the meantime, cashed the check at plaintiff currency exchange, endorsing the back as "Fred Fentress A-OK Plumbing Sole Owner." Plaintiff obtained a default judgment against Fentress.

Hodge filed a motion to dismiss the action as to her, asserting the defense of illegality. She had discovered that Fentress was not a licensed plumber listed with either the State or Chicago. Under "An Act in relation to the licensing and regulation of plumbers ***" (Plumbers Licensing Act or Act) (Ill. Rev. Stat. 1989, ch. 111, par. 1101 *et seq.*), plumbers must obtain a license before practicing their trade. A violation of the Act is a Class B misdemeanor for the first offense. (Ill. Rev. Stat. 1989, ch. 111, par. 1128.) According to Hodge, the plumbing contract was illegal and void; therefore, plaintiff took the check subject to the illegality defense. The trial court agreed and entered judgment in favor of Hodge.

OPINION

■■ Under the Uniform Commercial Code (UCC), commercial instruments including checks are meant to be freely negotiable, and to that end, a holder in due course will take the instrument free from "all defenses of any party to the instrument with whom the holder has not dealt except *** [such] other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity." Ill. Rev. Stat. 1989, ch. 26, par. 3—305(2)(b).

Comment 6 to UCC section 3—305 explains that the question of illegality is a matter of State law, and if under the law governing the contract the effect of the illegality is to make the obligation entirely null and void, the defense is good. See Ill. Ann. Stat., ch. 26, par. 3—305, UCC Comment, at 184 (Smith-Hurd 1963).

The dispositive issue before us, therefore, is whether under Illinois law the contract between Hodge and the plumber was null and void. If so, the defense of illegality was properly asserted and applied in this case. If the underlying obligation was merely voidable, however, the defense fails.

In support of its position that the illegality defense is ineffective in this case, plaintiff relies on what it describes as two lines of cases. The first line, according to plaintiff, holds that the defense can only be asserted where an applicable statute makes the negotiable instrument itself void. The second line of cases holds that the defense can be asserted only where the applicable statute makes the underlying contract void. According to plaintiff's rationale, therefore, the only way the illegality defense could prevail in the pending case would be if the plumbers' licensing statute expressly declared that checks drafted as payment for unlicensed plumbing services were void or that contracts entered into in violation of the Act were null and void.

In support of its argument that a statute must declare the negotiable instrument void, plaintiff cites two pre-UCC Illinois cases, *Town of Eagle v. Kohn* (1876), 84 Ill. 292, and *Pope v. Hanke* (1894), 155 Ill. 617, 40 N.E. 839. In *Eagle* (84 Ill. at 296), the court stated that "unless it has been *so expressly* declared by the legislature, illegality of consideration will be no defense in an action at the suit of a *bona fide* holder, without notice of the illegality." (Emphasis in original.) In *Eagle*, however, the commercial paper in issue was not a product of illegality, and the court's actual ruling is of limited relevance to this case. The plaintiffs, purchasers of bonds issued to finance a railroad project, were attempting to collect upon the interest warrants of the bonds. The town as issuer and payor of the bonds interposed as a defense the fact that the conditions of the bonds had not been met by the railroad company. The conditions, incorporated as part of the legislation enabling the bonds to be issued, expressly stated that the bonds would be not valid or binding until such conditions were satisfied. The court noted that ordinarily, conditions of a bond would not be a defense against a *bona fide* indorser without notice. The court also remarked that the transaction was not illegal, nor were the bonds declared void by the statute. Nevertheless, the court held that because of the peremptory language stating that the bonds would not be valid and binding obligations until the conditions were satisfied, they would be treated as invalid and unenforceable at the time they were presented because the conditions had not been met.

In *Pope*, the court held that a note given as part of a gambling transaction would be considered of no force or effect, even as against a holder who took the note in good faith without knowledge of its illegality, because the legislature had expressly declared such instruments null and void. This is still the law today, as the gam-

bling legislation provides that all "promises, notes, bills *** made, given *** or executed *** in violation of *** this Article are null and void." (Ill. Rev. Stat. 1989, ch. 38, par. 28—7(a).) The court in *Pope* expressed concern that free negotiability of instruments would be threatened if courts could hold instruments void for illegality without an express declaration from the legislature declaring them void.

Hodge maintains, and we agree, that *Pope* and *Eagle* do not defeat her ability to raise the illegality defense in the pending case because the Illinois legislature, by adopting section 3—305 of the UCC, has expressly declared that illegality *is* an available defense against a holder in due course, as long as the effect of the illegality is to render the obligation sued upon null and void. That requires consideration of all relevant authority, including case precedent. We cannot fairly assume an additional requirement that before the defense can be used against a holder in due course, there must be an express statutory provision that declares a particular category of contracts or negotiable instruments void. We do agree, however, that Illinois courts should not apply the illegality defense against holders in due course unless the illegal transaction is of the type that wholly nullifies the contract and thereby renders the instrument subject to the illegality defense.

■ In this State, the legislature has passed extensive legislation relating to the licensing of many trades and professions, recognizing that the regulation of these professions is essential to the public health, safety, and welfare. For example, the Plumbers Licensing Act, in its declaration of purpose and policy, states:

"§1. It has been established by scientific evidence that improper plumbing can adversely affect the health of the public. [Examples omitted]. Faulty plumbing is potentially lethal and can cause widespread disease and an epidemic of disastrous consequences.

To protect the health of the public it is essential that plumbing be installed by persons who have proven their knowledge of the sciences of pneumatics and hydraulics and their skill in installing plumbing.

*** [T]his Act is therefore declared to be essential to the public interest." Ill. Rev. Stat. 1989, ch. 111, par. 1101.

In furtherance of the legislative goals of providing standards and protecting the public health, the Act provides that one who attempts to practice plumbing without a license may suffer substantial penalties, including criminal prosecution and fines. By judicial

construction, the unlicensed plumber also forfeits his right to compensation for (illegal) services rendered. In *Wright v. Baird* (1928), 249 Ill. App. 90, the court held that an unlicensed plumber could not recover a fee for his fully performed services because the contract violated the Plumbers Licensing Act. In reaching this conclusion, the court rejected the argument that such a result could not occur unless the licensing statute expressly declared such contracts illegal. *Cf. Pascal P. Paddock, Inc. v. Glennon* (1964), 32 Ill. 2d 51, 203 N.E.2d 421 (Mechanic's lien would be enforced against owners of swimming pool, even though there was a question whether the unlicensed status of plumber precluded enforcement, where the plumbing equalled only 5½% of the construction contract price; company's supervising official, who was licensed, oversaw plumbing work; and owners failed to establish that workers on the job were not supervised apprentices).

■ In another licensing case, the court noted, "In Illinois, generally, a statute which declares an act illegal and which imposes a penalty for its violation renders a contract for the performance of such an act void and unenforceable." (*T.E.C. & Associates, Inc. v. Alberto-Culver Co.* (1985), 131 Ill. App. 3d 1085, 1095, 476 N.E.2d 1212 (Nonlicensed employment agency could not recover payment for services where licensing statute made violation of statute a criminal offense).) The court in *T.E.C.*, like that in *Wright v. Baird*, held that the licensing statute need not expressly declare a contract made in violation of its provisions to be illegal in order for the court to find it illegal. See also *Keenan v. Tuma* (1926), 240 Ill. App. 448, 456 (Employment contract for services of unlicensed architect provided for illegal consideration and was therefore a nullity); *E & B Marketing Enterprises, Inc. v. Ryan* (1991), 209 Ill. App. 3d 626, 629, 528 N.E.2d 339, 341-42 ("[S]tatute need not expressly declare a particular contract void to render it illegal under the regulatory scheme of the statute") (voiding a contract that provided for physician fee-splitting); *Leoris v. Dicks* (1986), 150 Ill. App. 3d 350, 353, 501 N.E.2d 901, *appeal denied* (1987), 115 Ill. 2d 542, 511 N.E.2d 429 (contract made in contravention of public policy against certain types of attorney fee-splitting would be deemed void and unenforceable); *Tovar v. Paxton Community Memorial Hospital* (1975), 29 Ill. App. 3d 218, 330 N.E.2d 247 (contract between unlicensed physician and hospital for performance of physician services held to be illegal and void); *Nutri-Pro, Inc. v. Phelps* (1988), 172 Ill. App. 3d 505, 526 N.E.2d 891 (Illinois law holds that contracts in direct contravention of statutory purpose are not en-

forceable even though the statute itself inflicts a penalty and does not expressly declare related contracts void); see also *Federal Land Bank v. Walker* (1991), 212 Ill. App. 3d 420, 571 N.E.2d 242, *appeal denied* (1991), 141 Ill. 2d 539, 580 N.E.2d 112.

The cited cases clearly defeat plaintiff's argument that the contract in question is not void unless the Plumbers Licensing Act or other legislation expressly declares it to be. Courts can and do declare contracts void all the time. The more precise question, however, is whether a contract is truly "void" instead of merely "voidable," the distinction being that a voidable contract can be ratified and enforced by the obligor, although not by the wrongdoer, while the void contract cannot be. (See Restatement of Contracts §475, Comment *b* (1932).) According to plaintiff, the rights of a holder in due course, as an innocent third party, cannot be defeated unless the obligation is truly void.

The primary case plaintiff relies on is *Bankers Trust Co. v. Litton Systems, Inc.* (2d Cir. 1979), 599 F.2d 488, 491, a case applying New York law to a contract allegedly induced by commercial bribery. The court held that the subject matter of the contract itself (equipment leasing) was not illegal; therefore, the illegality defense could not be asserted against the banks which held an assignment of equipment leases. As holders in due course, the banks' rights to collect under the leases were not defeated by the fact that the leases had been obtained by commercial bribery.

■ We agree that it is critical to determine whether a particular transaction is void or voidable when the rights of holders in due course are involved. As the *Bankers Trust* court noted, the relevant New York cases on illegal contracts induced by commercial bribery did not involve holders in due course and therefore it could be assumed that the authors of the opinions were using the term "void" loosely in characterizing the contracts before them. We also acknowledge that in the Illinois cases cited above, the illegal nature of the contracts was discussed in the context of a party attempting to seek compensation for performing services in violation of licensing laws or in violation of public policy. Accordingly, the fact that the courts used the term "void" to describe the contracts may not be conclusive on the question whether the rights of a holder in due course are extinguished by that characterization. See concurring and dissenting opinions in *Vedder v. Spellman* (Wash. 1971), 78 Wash. 2d 834, 480 P.2d 207 (affirming judgment for defendant homeowner who stopped payment on check given to plaintiff home

repairman; noting contract should not be viewed as void *ab initio* for all purposes).

■ Unlike the *Bankers Trust* court, however, we do not so readily assume that the authors of the Illinois licensing cases were imprecise in their use of the term "void." If contracts made in violation of licensing laws are merely voidable by the obligor, presumably they can be enforced or ratified by the obligor. In the pending case, we do not believe a contract made in violation of the plumbing licensing statute could be specifically performed or ratified, by Hodge or anyone else. To permit ratification of a criminal act, one that violates a strongly expressed legislative policy, would further no legal or equitable goal. Consequently, the contract made in violation of the Act must be viewed as a legal nullity.

Not all acts that violate a statute form the basis of an illegality defense against a holder in due course, however, and it may be difficult at times to distinguish those that do from those that do not. (Compare *Worthen Bank & Trust Co. v. United Underwriters Sales Corp.* (1971), 251 Ark. 454, 474 S.W.2d 899 (contracts in violation of law governing the licensing of foreign corporations to do business in Arkansas are considered void *ab initio*), with *Salitan v. Carter, Ealey & Dinwiddie* (Mo. App. 1960), 332 S.W.2d 11 (under State statute, contracts of nonlicensed foreign corporations are not completely void but merely unenforceable until such time as the foreign corporation complies with Missouri law); see also *Logen v. Panuska* (Minn. 1980), 293 N.W.2d 359 (contract in violation of blue sky law does not defeat right of holder in due course to collect payment) (two judges dissenting); *Middle Georgia Livestock Sales v. Commercial Bank & Trust Co.* (1971), 123 Ga. App. 733, 182 S.E.2d 533 (holder in due course of checks for purchase of stolen cattle could not recover against maker of check who had no knowledge of theft; if the thing for which the note is given is outlawed, so is the note standing on such foundation outlawed).) At least one State takes the view that a contract which violates a business statute or regulation is not void unless made so by the express terms of the act and, if the statute provides a penalty for its violation, such penalty is the exclusive remedy and the courts will not imply an intent to void a negotiable instrument arising out of such violation. *Stegall v. Kynaston* (1980), 26 Wash. App. 731, 613 P.2d 1214.

We could find no Illinois case that has ruled upon the precise illegality defense before this court, in the context of the rights of a holder in due course. At least two other jurisdictions, however, have determined that contracts in violation of trade or professional

licensing laws are null and void even when holders in due course are involved. *Columbus CheckCashiers, Inc. v. Stiles* (1990), 56 Ohio App. 3d 159, 565 N.E.2d 883 (Check-cashing firm could not recover against homeowner who issued check to unlicensed contractor; contract was held illegal and void based upon violation of Ohio licensing law); *Wilson v. Steele* (1989), 211 Cal. App. 3d 1053, 259 Cal. Rptr. 851 (Contractor's unlicensed status is a defect which may be asserted against a holder in due course).

In *Wilson v. Steele*, the assignee of a note given in consideration for the services of an unlicensed home remodeling contractor attempted to enforce the note against its maker. Under California's licensing statute, the unlicensed contractor could not bring an action to collect his fees without alleging and proving he was duly licensed. The court in *Wilson* found that the effect of this provision was to make the contract for unlicensed services illegal and void. The court went on to hold that the defense of illegality could be asserted, therefore, against the holder in due course.

Plaintiff attempts to distinguish *Wilson* on the ground that the California statute expressly provides that an unlicensed contractor may not bring or maintain any action for collection on a contract unless he is licensed. In its brief, plaintiff comments, "Such a provision is virtually identical to a provision that deems the contract void." According to plaintiff, since the Illinois Act does not have a similar provision, a different result should obtain.

■ We disagree. In *Wright v. Baird* the court construed the licensing act's prohibitions as meaning that an unlicensed plumber could not collect any compensation, even though the statute did not so state in those words. In Illinois, therefore, the law by judicial construction equates with the California statute's express provision. Since plaintiff agrees that such provision is virtually identical to one deeming the contract void, we conclude that the illegality defense asserted here rendered the contract void, not voidable. Hence, under the UCC, the defense is good against a holder in due course.

As a matter of policy, plaintiff argues that it is unfair to expect a currency exchange to police the negotiable instruments it receives to ferret out possible illegalities in the underlying contracts. While the argument is reasonable enough, the same could be made for all of the defenses which defeat the rights of holders in due course. The currency exchange does not have a way to ascertain if a check has been drafted under duress, if it represents a gambling debt, or if it is the check of one without legal capacity to be bound. The so-called "real" defenses are nonetheless valid and cut off the rights

of the innocent holder of the instrument to obtain recourse against makers or endorsers of the instrument in question. Currency exchanges are in the business of cashing checks and undertake the attendant risks.

We conclude that the illegality defense asserted in this case is of the type to render the obligation a nullity under section 3—305 of the Code. Therefore, we affirm the trial court's dismissal of the action against Hodge, as maker of the check.

Affirmed.

JOHNSON, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

This appeal brings into question the defense of illegality as asserted against the plaintiff, a holder in due course. The defendant was the drawer of a check. She issued the check as partial advance payment to a plumbing contractor. It is asserted on appeal that the plumbing contractor was unlicensed and the contract was therefore illegal and not merely voidable, but void. The majority holds that in fact it was void and not merely voidable. It reasons that the regulatory statute concerning plumbers enacts criminal sanctions for practicing plumbing without a license and that the contract therefore "violates a strongly expressed legislative policy, [and] would further no legal or equitable goal." (234 Ill. App. 3d at 1024.) I suggest that a contrary result should prevail and respectfully dissent.

Even as between the original parties criminal sanctions do not necessarily mean that a contract is void or unenforceable. (*Charter Finance Co. v. Henderson* (1975), 60 Ill. 2d 323, 326 N.E.2d 372.) The majority's mechanical approach to this issue seems to suggest that even if the plumbing contractor had completed the work, it not only would not be entitled to the contract price but could not even bring a restitutionary action for the reasonable value of its services. *Cf.* Restatement (Second) of Contracts §§197, 198, 199 (Restitution) (1981).

Whatever may be visited upon the original parties aside, this transaction involves a holder in due course. *Bankers Trust Co. v. Litton Systems, Inc.* (2d Cir. 1979), 599 F.2d 488, treats with the issue of the distinction between the original parties to the contract and holders in due course. In *Bankers Trust*, the court found that under New York law the alleged illegality in the situation before it, that is, a contract induced by bribery, rendered the contract be-

tween the parties void. However, as to a holder in due course it was merely voidable. The *Bankers Trust* court reasoned that the basic policy that would render a bribery induced contract void is discussed in section 598, Comment *a*, of the Restatement of Contracts, which states that courts deny relief because the plaintiff is a wrongdoer and not because they favor the defendant. Where an innocent third party, the holder in due course here, is suing on an illegal contract, the policy argument is inapplicable. Restatement of Contracts §598, Comment *a* (1932).

Illinois addressed this issue in the case of *McGregor v. Lamont* (1922), 225 Ill. App. 451. There the defendant asserted that he was induced to enter into a contract for the purchase of stock by false and fraudulent representations and asserted this as a defense against a holder in due course. The court held in favor of the holder in due course, adopting the position of what it stated was the weight of authority that while the instrument might be void as between the parties, it was not void against the holder in due course.

I believe that we should follow *McGregor* and *Bankers Trust*. The statement of the majority that to allow the holder in due course to recover "would further no legal or equitable goal" is not well taken. (234 Ill. App. 3d at 1024.) In my judgment, the holding unreasonably burdens commerce by inhibiting check cashers from freely accepting checks in an ostensible ordinary commercial transaction.